The ANACONDA COMPANY, a Montana corporation, Plaintiff-Appellee,

v.

William D. RUCKELSHAUS, Administrator of the United States Environmental Protection Agency, et al., Defendants-Appellants.

No. 73-1272.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 11, 1973.

Decided Aug. 8, 1973.

Rehearing Denied Sept. 5, 1973.

Henry J. Bourguignon, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., James L. Treece, U. S. Atty., and Charles W. Johnson, Asst. U. S. Atty., Denver, Colo., and James A. Glasgow and Carl Strass, Attys., Dept. of Justice, on the brief), for defendants-appellants.

Harry L. Hobson of Holland & Hart, Denver, Colo. (Robert T. Connery and R. Brooke Jackson, Holland & Hart, Denver, Colo., on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and McWILIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an action instituted in the United States District Court for Colorado by Anaconda Copper Company of Butte, Montana, seeking injunctive relief against various officials of the Environmental Protection Agency. Plaintiff sought relief against the promulgation of a proposed rule controlling emissions of sulfur oxide in Deer Lodge

County, Montana unless and until defendants-appellants conduct an adjudicatory hearing and unless and until it promulgates an environmental impact statement. The district court granted the requested relief in an extensive opinion which is reported at 352 F.Supp. 697 (D.Colo.1972).

The suit was instituted here September 26, 1972. The trial court heard testimony on the preliminary injunction request for three days at the completion of which the mentioned declaratory judgment and injunctive relief were issued.

As a partial basis for jurisdiction, the trial court invoked 42 U.S.C. § 1857h–2 authorizing citizen suits to enforce the Act. The trial court also considered the case as one in which the plaintiff's constitutional rights were in jeopardy and reasoned that the emergency relief was justifiable on this ground.

The questions presented to this court on appeal are first, whether the Environmental Protection Agency must file an environmental impact statement before it proposes or promulgates a regulation as part of a state implementation plan under § 110(c) of the Clean Air Act Amendments of 1970. Second, whether the Environmental Protection Agency is obligated to grant to Anaconda an adjudicatory hearing with the right to subpoena and cross-examine witnesses before promulgating or indeed holding further hearings on its proposed regulation under § 110(c) of the Clean Air Act Amendments. The crucial aspect of the case is then the validity of the *proposed* EPA regulation for the control of sulfur oxide emissions in Deer Lodge County, Montana where Anaconda operates its smelter. The company is the only significant source of sulfur oxide pollution in the county and so concededly the proposed regulation, although general in form, would apply to Anaconda alone.

Preliminary to the issuance by EPA of the proposed regulation, efforts were made to persuade state officials to issue a plan as required by the Clean Air Act

Amendments of 1970. The Montana State Board of Health held a public hearing on Montana's proposed implementation plan. Anaconda was present and presented its views on the state's proposed regulation for restricting sulfur oxide emissions. Following this hearing, Montana submitted to the EPA an implementation plan, but the provision for control of sulfur oxide emissions was omitted. The state plan then was disapproved by the EPA on May 31, 1972 insofar as it excluded the sulfur oxide emissions provisions. Following this action the administrator of the EPA, on July 27, 1972, proposed a regulation to control the emission of sulfur oxide within the County. This proposal would have limited emissions to a discharge of 7,040 pounds of sulfur oxides per hour. At the same time, EPA gave notice of intent to hold public hearings on its proposal on a date 30 days after the issuance. This provision of the regulation is said to have been patterned after the sulfur oxide emissions limitation which had been in the state's proposal which was deleted.

Anaconda immediately demanded an adjudicatory hearing on EPA's proposed regulation, but EPA's reply was that the public hearings were to be legislative or informational and not adjudicatory. Subsequently, it was further explained that the hearing would not be conducted in the nature of a trial. Instead, any interested persons or corporations could make a statement and all relevant testimony would be received. Also, the hearing record would remain open until October 7, 1972, for written statements or other submissions. After that there would be a further hearing to allow further public statements.

Anaconda's position expressed at the hearing was that it was spending large sums of money on its own initiative in an effort to control sulfur oxide emissions; that it was preparing to restrict them from the current rate of 64,000 pounds per hour to 50,000 pounds per hour. Its position was further expressed that the 7,040 pounds per hour

would be technologically and economically unfeasible and would create a significant water pollution problem.

Soon after this the present suit was filed (on September 26, 1972). An extensive evidentiary hearing was conducted. The district court then rendered its decision on December 19, 1972.

■ The question which we must first determine is whether it was proper for the district court to entertain the injunction suit in view of the fact that the administrative proceedings had not been completed and the statute calls for review by the court of appeals for the appropriate circuit (in this instance the Ninth). We conclude that it was not.

■ The other points advanced, as we have mentioned, are whether the EPA is subject to the NEPA requirement of environmental impact statements and whether an adjudicatory hearing must be held. The three mentioned issues are somewhat interrelated. Thus, under some circumstances, injunctive action by the district court is proper. Without attempting to formulate a general rule here, such action is ordinarily inappropriate in the middle of the administrative process unless the administrative action is virtually final and threatens irreparable injury consisting of a gross violation of fundamental rights.

## I.

■ The presence of a statutory review remedy will ordinarily render the injunctive interruption of the administrative process improper. *See* Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Smith v. Duldner, 175 F.2d 629 (6th Cir. 1949); Gates v. Woods, 169 F.2d 440 (4th Cir. 1948). In the statute before us Congress has specifically provided that review of an approval or implementation plan is to be filed only in the United States Court of Appeals for the

District of Columbia Circuit or for the appropriate circuit. *See* 42 U.S.C. § 1857h–5(b)(1). The intent of Congress to make the court of appeals the exclusive forum is apparent from that wording.[1] Unquestionably injunctive relief in this context is a form of judicial review, 3 Davis Administrative Law Treatise § 23.04 (1958), but the injunction does not lie when the statutory remedy is adequate as it is here. The court of appeals is authorized to review all of the questions. *See* NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S. Ct. 615, 81 L.Ed. 893 (1937); Anniston Mfg. Co. v. Davis, 301 U.S. 337, 345–346, 57 S.Ct. 816, 81 L.Ed. 1143 (1937). Indeed, it may even grant an injunction. *See* Eastern Greyhound Lines v. Fusco, 323 F.2d 477 (6th Cir. 1963); Public Utilities Comm'n v. Capital Transit Co., 94 U.S.App.D.C. 140, 214 F.2d 242 (1954); 28 U.S.C. § 1651.

■ It cannot be successfully argued that § 1857h–2(a)(2) which authorizes a citizen to commence a civil action against the administrator for failure to perform a non-discretionary duty justifies jurisdiction in this case since Congress has made clear in § 1857h–5(b)(1) that the courts of appeals are to review the promulgation or implementation of a clean air plan.

■ Without question the present proceedings were of this character, and so the only effect of this action is to frustrate the administrative proceedings and to intrude on the court of appeals' function. To allow review by way of injunction in the case at bar could only serve to cause delay and to take the case up in a district court removed from the scene is not appropriate either, for it could conceivably encourage forum shopping and the thwarting of procedures which Congress has carefully adopted. It follows then that where, as here, Congress has specifically designated a forum for judicial review of administra-

---

1. For similar results under other statutes, see UMC Industries, Inc. v. Seaborg, 439 F.2d 953, 955 (9th Cir. 1971); United States v. Southern Railway Co., 380 F.2d 49, 54 (4th Cir. 1967).

tive action and does so in unmistakable terms except under extraordinary conditions, that forum is exclusive. *See* Getty Oil Company (Eastern Operations) v. Ruckelshaus, 467 F.2d 349 (3d Cir. 1972), cert. denied, 409 U.S. 1125, 93 S. Ct. 937, 35 L.Ed.2d 256 (1973). A further reason for denying jurisdiction in this case is that the cause was not ripe for injunctive relief. The regulation here under review was merely a proposed one and not formalized and final. The problem here is much like that before the Supreme Court in Toilet Goods Association v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). There the regulation had been promulgated but not applied to the particular litigant and the Court held that the promulgation of the regulation did not injure the party involved since there was no certainty that it would be brought to bear on him. The Court added:

> We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here.

This court had a somewhat similar problem before it in Pax Company of Utah v. United States, 454 F.2d 93 (10th Cir. 1972). There the Pax Company obtained an injunction against administrative proceedings which, if carried out, could have resulted in the cancellation of registration for weed and pest killers manufactured by Pax. This administrative action was instituted pursuant to the Federal Insecticide, Fungicide and Rodenticide Act. There, as in this case, the administrative procedures were not allowed to take their course. It was held that the administrative procedure in that case could result in Pax's being exonerated; that Pax was unable to show present injury and, therefore, the extraordinary proceedings were inappropriate. The undesirability of allowing

litigants to obtain threshold review by way of preliminary injunction, thereby avoiding the administrative hearing and the court review provided by statute was there mentioned.

In a recent decision, Utah International, Inc. v. Environmental Protection Agency and Jicarilla Apache Tribe of Indians, 478 F.2d 126 (10th Cir. 1973), this court dismissed a petition for review as not being ripe where it had not been finally promulgated. The court said that the matter before it was interlocutory and therefore not ripe for judicial review, citing Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942) is distinguished in *Toilet Goods* on the basis that the regulation there was final and effective. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), is also to be distinguished. There the regulation was bearing down on the litigant who was subjected to seizure of goods, heavy fines and possible criminal liability.

We conclude that the case was not ripe for review and that there was not any justification for intervention by the district court.[2]

## II.

We are not called on to decide the merits of Anaconda's contention that the EPA was required to file (consistent with the NEPA of 1969) a NEPA statement. Our holding above that the district court lacked jurisdiction precludes such decision. It is only necessary to inquire as to whether the contention appears meritorious whereby it could justify jurisdiction. Having done so, we conclude that the contention is lacking in merit and substance. The important point here is that the EPA's

---

2. Our Circuit has a great abundance of environmental cases. There is no need for the courts of this Circuit to poach in the territory of the Ninth Circuit.

sole mission is to improve the quality of the human environment. To compel the filing of impact statements could only serve to frustrate the accomplishment of the Act's objectives. Moreover, the legislative history which is developed in Portland Cement Ass'n v. Ruckelshaus, 486 F.2d 375 (D.C.Cir., 1973) clearly establishes that such a statement was not contemplated by Congress.

Furthermore, no court of appeals has held that such an impact statement is necessary and the several decisions which have considered it have ruled that it is not. *See* Appalachian Power Co. v. EPA, 477 F.2d 495 (4th Cir., 1973); Duquesne Light Co. v. EPA, 481 F.2d 1 (3d Cir., 1973); Buckeye Power, Inc. v. EPA, 481 F.2d 162 (6th Cir., 1973); International Harvester Co. v. Ruckelshaus, 478 F.2d 615 (D.C.Cir., 1973).

■ This is not to say that the EPA is exempt from weighing and considering other environmental effects of its order. Being engaged in the environmental improvement effort, it must weigh these and other factors such as economics. It should, of course, inquire as to whether, for example, water pollution will result from its instant air cleaning program. No doubt it will fully weigh and consider these factors. We cannot assume that the administrative hearing will be a mere formality, that it will turn out to be a rubber stamp operation. If it is deficient, however, the reviewing court can soon remedy the condition.

### III.

■ Our final question is whether there was sufficient substance to Anaconda's contention so that it would appear that it has been deprived of procedural due process by EPA's refusal to grant a trial type adjudicatory hearing. Assuming that a showing of real deprivation would justify a threshold injunctive hearing, we must determine that the showing here was grossly insufficient to justify the action taken. The trial court saw as a result of denial of an adjudicatory hearing a violation of procedural due process together with a violation of the Clean Air Act and the Administrative Procedure Act. We must disagree. The Administrative Procedure Act requires that there be an adjudicatory hearing only if the agency statute specifies that the particular rule-making hearings be "on the record after opportunity for an agency hearing." No such requirement is set forth in the Clean Air Act. Notwithstanding that these words are used in other sections of the Act, omission of them in § 110(c) is therefore significant. *See* Allegheny-Ludlum Steel Co., 406 U.S. 742, 757, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972); 2 K.Davis Administrative Law Treatise § 13.08, at 225 (1958).

By requiring that the hearing under § 110(c) be public Congress sought to bring about broad and flexible participation from all interested groups subject always to a review by the court of appeals. The fact that the proceedings are transcribed does not, of course, mean that the hearing is "on the record."[3]

The fact that Anaconda alone is involved is not conclusive on the question as to whether the hearing should be adjudicatory, for there are many other interested parties and groups who are affected and are entitled to be heard. So the guidelines enunciated by Mr. Justice Holmes in Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915) are not applicable.

We have also examined the early decision in Londoner v. Denver, 210 U.S. 373, 386, 28 S.Ct. 708, 714, 52 L.Ed. 1103 (1908), and nothing therein imposes the adjudicatory requirement. There it was said by Justice Moody:

Many requirements essential in strictly judicial proceedings may be dis-

---

3. *See* Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410–415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). *Cf.*

Buckeye Power, Inc. v. EPA, 481 F.2d 162 (D.C.Cir., 1973).

pensed with in proceedings of this nature. But even here a hearing, in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument, however brief; and, if need be, by proof, however informal.

From our examination of the Act and the related case law and statutes, it would appear that the congressional requirement of a public hearing has been satisfied. Notice has been given and the proposed regulation has been issued. Anaconda appeared at that hearing and submitted material and was given an opportunity to submit more material and information for a period of 75 days following the public hearing. We perceive no violation of Anaconda's right to procedural due process. *See* Myers v. Bethlehem Shipbuilding Corp., *supra*; NLRB v. Jones & Laughlin Steel Corp., *supra*; Anniston Mfg. Co. v. Davis, *supra*; Buckeye Power, Inc. v. EPA, *supra*; Pax Co. of Utah v. United States, *supra*.

Unending procedure could be produced by an adjudicatory hearing. This could bring about unending delay which would not only impede but completely stifle congressional policy. We do not, of course, condemn the trial court's concern for the rights of Anaconda. Those rights are important and the court should be sensitive to them, but those rights are not of such magnitude as to overcome congressional policy and the rights of the remainder of the community.

The judgment of the district court is reversed and the cause is remanded with directions to vacate its judgment herein and to dismiss the action.

LEWIS, Chief Judge (concurring).

I am not prepared to agree that the trial court lacked naked jurisdiction to entertain this action under 42 U.S.C. § 1857h–2 [1] but am in complete accord with the views expressed in the main opinion when projected against the merits of the controversy. However, I wish to add a comment indicating my subjective dis-

approval of one aspect of E.P.A. procedure which surfaced during the presentation of oral argument.

It appears that the figure of the allowable sulfur oxide emission of 7,040 pounds set by the E.P.A. in its proposed regulation was not the work product of the agency staff and was simply an arbitrary figure, not intended by the agency as one defendable by the E.P.A. as reasonable in fact, and was used only as the bait for discussion at the public hearing to be later scheduled. Since the figure of 7,040 pounds constituted a reduction of 89% in Anaconda's emission of sulfur oxide such a proposal certainly activated protest and discussion. However such procedure is inherently unfair, might well serve to destroy the value of corporate stock in a lesser company than Anaconda, and most certainly will deter any acceptance of expertise in the E.P.A. by the courts. All proposals by the E.P.A. should reflect that agency's considered judgment. Nothing less than that is acceptable to the public, industry, or the courts.

---

1. Although the trial court's jurisdiction was controverted at the trial level this con-

tention was neither briefed nor argued on appeal.