**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 3 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STEELWORKERS OF
AMERICA,

        Plaintiff -  Appellant,

v.

OREGON STEEL MILLS, INC.;
CF&I STEEL, L.P., doing business as
Rocky Mountain Steel Mills,

        Defendants - Appellees.

No. 01-1379

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 00-M-873)**

---

Alice O'Brien (Jeremiah A. Collins of Bredhoff & Kaiser, Washington, DC, and
Joseph M. Santarella, Jr., of Santarella Law Office, Littleton, Colorado, with her
on the briefs), Bredhoff & Kaiser, Washington, DC, for Plaintiff-Appellant.

Joanne Herlihy (Eugene F. Megyesy, Jr., with her on the brief), Dufford & Brown,
Denver, Colorado, for Defendants-Appellees.

---

Before **HENRY** and **McKAY** , Circuit Judges, and    **OBERDORFER** ,[*] District
Judge.

---

     [*] The Honorable Louis F. Oberdorfer, United States District Judge for the
District of Columbia, sitting by designation.

**OBERDORFER** , District Judge.

Plaintiff United Steelworkers of America ("USWA") brought this action under the citizen suit provision of the Clean Air Act ("CAA"), 42 U.S.C. § 7604, alleging that the CF&I Steel Mill in Pueblo, Colorado (the "Pueblo Mill") was operating in violation of certain CAA requirements. The District Court dismissed the two causes of action in USWA's amended complaint on separate jurisdictional grounds, and dismissed both claims against Oregon Steel Mills, Inc. ("Oregon Steel") on the further ground that USWA had failed to plead sufficient facts to state a claim against that defendant. We find that the District Court does have jurisdiction to consider both claims asserted by USWA, and that the District Court erred in dismissing the claims against Oregon Steel. We therefore reverse the District Court's decision on all three grounds, and remand the case for further proceedings consistent with this opinion.

## I.

USWA brings this action under Section 304(a) of the CAA (the "citizen suit" provision), alleging that the Pueblo Mill had been operating two electric arc furnaces ("EAFs"), which are used to melt scrap steel, in violation of the Act. USWA's amended complaint alleges infringement of two sets of CAA

regulations: (1) the new source performance standards ("NSPS requirements"), which regulate particulate emissions from certain sources referred to as "affected facilities";[1] and (2) the requirements for prevention of significant deterioration in air quality ("PSD requirements"), some of which must be met before a major new emissions source is constructed in certain areas.

In Colorado, these CAA regulations are administered by the Colorado Air Pollution Control Division ("the Division"). On two occasions – once in July 1996, and again in November 1999 – the Division had determined that the EAFs at the Pueblo Mill were not subject to the NSPS requirements. The Division found that the Pueblo Mill had begun a continuous program of construction with respect to its two interrelated EAFs before October 21, 1974, thus exempting them from the NSPS regulations. The EPA, however, undertook its own review and on December 14, 1999, issued a preliminary opinion that one furnace at the Pueblo Mill (EAF #2) *was* subject to the NSPS requirements.

Before the EPA had issued its final ruling, on April 27, 2000, USWA filed in District Court its initial complaint in the citizen suit, alleging violations of various state and federal clean air regulations, including the NSPS requirements.

---

[1] The NSPS Subpart AA standards regulate particulate emissions from certain types of EAFs where the "affected facilities" were constructed, reconstructed, or modified after October 21, 1974, and before August 17, 1983. 40 C.F.R. § 60.270; Colorado Air Quality Regulation No. 6, 5 C.C.R. 1001-8.

On May 22, 2000, the EPA issued its final ruling, confirming that the NSPS standards were applicable to EAF #2 at the Pueblo Mill. In July 2000, defendants filed a petition for review of the EPA's final ruling with the Tenth Circuit, pursuant to Section 307(b)(1) of the CAA (42 U.S.C. § 7607(b)(1)), which provides for appellate review of certain final EPA actions.

While appellate review of the EPA ruling was pending, the citizen suit litigation moved forward. In an amended complaint filed April 3, 2001, USWA alleged that the Pueblo Mill had been violating the NSPS and PSD requirements through the operation of the two EAFs. USWA requested declaratory and injunctive relief, seeking to enforce compliance by the Pueblo Mill with the NSPS and PSD requirements. USWA named as defendants "CF&I Steel, L.P., doing business as Rocky Mountain Steel Mills," and Oregon Steel Mills, Inc., which "owns 87% of New CF&I, Inc., which in turn owns a 95.2% general partnership in CF&I," and which "through its interest in and control over defendant, CF&I, owns and operates the CF&I Steel Mill." First Am. Compl. ¶¶ 11, 13, 16.

On April 20, 2001, defendants moved to dismiss the amended complaint. With respect to the NSPS claim, defendants argued that the claim was precluded by the petition filed with the Tenth Circuit, seeking judicial review of the EPA's May 22, 2000 ruling. The District Court granted defendants' motion to dismiss the NSPS claim on jurisdictional grounds, declaring that USWA's action to

enforce the NSPS requirements "assumes the validity of the decision under judicial review and [therefore] constitutes an interference with the exclusive jurisdiction of the Court of Appeals" over the defendants' petition. Order of Dismissal at 8.

The District Court also dismissed USWA's PSD claim for lack of jurisdiction, reasoning USWA had not given the defendants sixty days advance notice of that claim, as required by 42 U.S.C. § 7604(b)(1)(A). Finally, the District Court dismissed both claims against Oregon Steel on the ground that USWA had failed to plead sufficient facts to support its allegations that Oregon Steel is the owner or operator of the Pueblo Mill, and therefore legally responsible for any alleged CAA violations. USWA appeals all three grounds for the dismissal.

## II.

### A.    Jurisdiction Over the NSPS Claim

USWA first argues that the District Court erred in dismissing its NSPS claim for lack of subject matter jurisdiction. We review *de novo*. *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001).

The District Court held that it lacked jurisdiction over the NSPS claim because the EPA had issued a final letter ruling regarding the applicability of the

NSPS standards to the Pueblo Mill, and because review of that ruling is still pending with another panel of this court. The District Court based its decision on Section 307(b) of the CAA, which provides that

> (1) A petition for review of . . . final action of the [EPA] Administrator . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. . ..
> (2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement. . ..

42 U.S.C. § 7607(b). Relying on this provision, the District Court found that USWA's citizen suit to enforce the NSPS requirements "assumes the validity of the decision under judicial review and [therefore] constitutes an interference with the exclusive jurisdiction of the Court of Appeals." Order of Dismissal at 8. In other words, the District Court reasoned that, because the EPA letter ruling – which laid the foundation for the NSPS claim in the citizen suit – was on appeal, it had no jurisdiction.

1. **Interpretation of Section § 307(b)**

The plain language of §307(b)(2) indicates that it is meant to prevent a party from challenging an EPA ruling via a district court proceeding; the provision does not hinder a party that brings an action consistent with, and in aid of, that ruling. When read in conjunction with § 307(b)(1), § 307(b)(2) prevents a party from choosing a district court to review an EPA action, thereby avoiding

direct review by the Court of Appeals. *See Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996) ("[J]urisdiction under § 307(b)(1) turns on whether the final agency action is the target of the challenger's claim[.]").

Notably, the phrase "judicial review" in § 307(b)(2) connotes that a judgment is being reconsidered by a different judicial officer. *See Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1101 (9th Cir. 1998) (judicial review "has two elements – (1) consideration of a dispute by a judicial officer, and (2) a decision"). In the present case, USWA is not seeking reconsideration, or "review" of an EPA ruling it disputes. Rather, it is bringing a separate enforcement action, not to challenge, but to implement that ruling.

Indeed, in most cases where the district court was divested of jurisdiction under § 307(b)(2), the plaintiff was seeking to challenge the EPA's ruling, either through a direct challenge or a cleverly packaged citizen suit claim. This court's decision in *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301 (10th Cir. 1973), provides an example of a citizen suit in district court effectively seeking to challenge an EPA ruling. In *Anaconda,* a copper company moved for an injunction that would prevent the EPA from promulgating a proposed rule controlling emissions of sulfur oxide in Deer Lodge County, Montana. The company's action was brought as a citizen suit (for the Administrator's failure to perform a non-discretionary duty), and the district court granted a preliminary

injunction. On appeal, this court held that the district court's intervention was improper, since the company was effectively seeking review of the EPA's proposed regulation, and the statute provides for review by the Court of Appeals. *Id.* at 1304. In any event, the case was not ripe for review since the EPA regulation at issue was proposed, and not final. *Id*. at 1305.

Decisions from other circuits offer similar interpretations of § 307(b). *See Oljato Chapter of Navajo Tribe, et al. v. Train*, 515 F.2d 654, 660-61 (D.C. Cir. 1975) (plaintiffs sought to stave off authoritative appellate review under § 307 by framing their claim in district court as a citizen suit challenging the EPA administrator's refusal to modify a standard); *Greater Detroit Resource Recovery Authority v. EPA, et al.*, 916 F.2d 317, 321-23 (6th Cir. 1990) (party ignored § 307(b) and filed suit in district court challenging the EPA's attempt to revoke its permit). Unlike the plaintiffs in these other suits, USWA is not seeking to interfere with direct appellate review of the EPA's substantive decision; indeed, such review is already in progress.

As clearly explained in *Delaware Valley Citizens Council for Clean Air v. Davis*, 932 F.2d 256, 265 (3d Cir. 1991), "citizens who claim that [CAA] standards themselves are inadequate must petition the appropriate court of appeals pursuant to § 7607, while citizens who merely wish to enforce the [CAA] standards may sue in district court pursuant to § 7604." Following the Third

Circuit's analysis, we conclude that USWA falls into the latter category, since it is seeking to enforce regulations that already are in effect, and that the District Court erred in dismissing its NSPS enforcement claim.

## 2. Procedure on Remand

In authorizing the District Court to maintain the enforcement action, we do not overlook the possibility that our colleagues conducting the substantive review of the EPA's NSPS decision may set it aside. However, the Supreme Court, in a related context, has indicated that enforcement actions should proceed against a polluter despite the fact that a decision regarding the underlying regulations is under review. *Train v. Natural Resources Defense Council, Inc., et al.*, 421 U.S. 60 (1975).[2] The Supreme Court in *Train* explained that CAA enforcement proceedings, including citizen suits, may go forward while the defendant is seeking a variance of emissions requirements imposed by the EPA and state authorities. As the Court stated,

> [T]he polluter is presumably within his rights in seeking judicial review. This litigation, however, is carried out on the polluter's time, not the

---

[2] The *Train* court considered the hypothetical of an alleged polluter that was clearly subject to existing regulations. If that polluter requested a variance from the regulations, was denied that variance by either the EPA or the state, and sought judicial review of that denial, the regulations would continue to apply in the interim. *Id* at 92. The posture of the present case is different: the question in the related Tenth Circuit proceeding is not the denial of a variance, but whether the NSPS standards should even apply to defendants.

public's, for during its pendency the original regulations remain in effect, and the polluter's failure to comply may subject him to a variety of enforcement procedures.

*Id.* at 92 n.27. *See also Ohio Envtl. Council v. United States Dist. Court, S. Dist. of Ohio, E. Div., et al.*, 565 F.2d 393, 397 (6th Cir. 1977) ("given the strong Congressional policy in favor of prompt enforcement of the Act, ordinarily enforcement should not be delayed while review of the EPA's action is under way, . ..")

The fact that the District Court has jurisdiction does not necessitate a possible waste of judicial resources; the District Court may choose to stay consideration of the NSPS claim, or consider the claim and stay enforcement of the judgment, until our colleagues reviewing the EPA ruling have announced their decision. *See generally Landis, et al. v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Will v. Calvert Fire Insurance Co., et al.*, 437 U.S. 655, 665 (1978) (same). In assessing the propriety of a stay, a district court should consider: whether the defendants are likely to prevail in the related proceeding; whether, absent a stay, the defendants will suffer irreparable harm; whether the issuance of a stay will cause substantial harm

to the other parties to the proceeding; and the public interests at stake. *See Battle v. Anderson*, 564 F.2d 388, 397 (10th Cir. 1977).

We therefore reverse the District Court's dismissal of USWA's NSPS claim for lack of jurisdiction, and remand that element of the case for further proceedings consistent with this opinion.

**B.      Sixty-Day Notice Requirement**

There remains for consideration the question of whether the District Court erred in dismissing USWA's PSD claim for failure to comply with the sixty-day notice requirement in the Clean Air Act's citizen suit provision (42 U.S.C. § 7604(b)(1)).  Our review of the District Court's dismissal is again *de novo*. *Aguilera*, 241 F.3d at 1292.  We conclude that the District Court should also maintain the PSD claim.

USWA convincingly argues that the notice provision does *not* apply to citizen suit PSD claims brought under 42 U.S.C. § 7604(a)(3).  Section 7604(a)(3) grants citizens the right to bring an action "against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C [or D] of subchapter I" of the CAA.  USWA's PSD claim properly invokes § 7604(a)(3) to enforce just such a specific permit requirement.  Courts have squarely held that claims brought under § 7604(a)(3)

are not subject to the notice requirements. *See, e.g., Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 963 (7th Cir. 1994) (Section "7604(a)(3) . . . is not subject to the 60-day rule").  This is because the Clean Air Act requires 60-day notice for citizen suit claims brought for violations of emissions standards (§ 7604(a)(1)) and for the EPA Administrator's failure to perform a non-discretionary duty (§ 7604(a)(2)), but *not* for permit requirement claims brought under § 7604(a)(3).  *See* 42 U.S.C. §§ 7604(b)(1), (2).

However, USWA is asserting this argument for the first time on appeal. Before the District Court, USWA relied on an entirely different statutory argument in explaining why advance notice was not necessary.[3]  In paragraph 2 of its amended complaint, USWA claimed subject matter jurisdiction pursuant to § 7604(a), but did not specify the subsection(s) on which it was relying.

As a general rule, this court will not consider arguments not raised below. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992). However, where, as here, the issue "is purely a matter of law . . . and . . . its proper resolution is certain," the court may consider it.  *Ross v. United States*

---

[3] Before the District Court, USWA argued that its claim was exempt under section 7604(b), which provided that "[an] action may be brought immediately after such notification in the case of an action under this section respect a violation of section 7412(i)(3)(A) or (f)(4) of this title."  USWA maintained that "(f)(4)" referenced section 7604(f)(4), not section 7412(f)(4).  The District Court dismissed USWA's argument as an "untenable distortion of plain language." Order of Dismissal at 9.

*Marshal for the E. Dist. of Oklahoma*, 168 F.3d 1190, 1195 n.5 (10th Cir. 1999) (citations omitted). *See also Stahmann Farms, Inc. v. United States*, 624 F.2d 958, 961 (10th Cir. 1980) (considering a new theory on appeal on the ground that it was "the most logical analysis for resolving the issue presented"); *Petrini v. Howard*, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) (considering a new argument on appeal where its "proper resolution [was] beyond doubt, and the failure to address the issues would result in a miscarriage of justice").

In this case, the purely legal nature of the issue justifies the exercise of our discretion to consider USWA's new argument. Persuaded by this new argument, we find that the District Court does have jurisdiction over the PSD claim, and we therefore also reverse the dismissal of that claim.

**C.    Dismissal of Claims Against Oregon Steel Mills, Inc.**

The third issue on appeal is whether the District Court erred in dismissing both claims against Oregon Steel Mills, Inc. on the ground that USWA "failed to plead adequate facts to establish that [Oregon Steel] is an owner and operator of the [Pueblo Mill]." Order of Dismissal at 5. The District Court's dismissal of claims against Oregon Steel for failure to state a claim is subject to *de novo* review. *See Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

To state a claim under Fed R. Civ. P. 8(a)(2), the plaintiff must offer "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The Supreme Court has emphasized that the requirements at the pleading stage are *de minimus. See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998) (the court must "presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations" at the pleading stage); *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) ("[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (citation omitted).

To state a claim against Oregon Steel under the CAA, a court must be able to conclude that Oregon Steel is either an "owner" of the Pueblo Mill or an "operator" as those terms are interpreted under the CAA.[4]  In its First Amended Complaint, USWA alleged that Oregon Steel "owns 87% of New CF&I, Inc., which in turn owns a 95.2% general partnership interest in CF&I.  In addition,

---

[4] The EPA has defined the term "owner or operator" as "any person who owns, leases, operates, controls, or supervises a stationary source."  40 C.F.R. § 61.02.  While the citizen suit provision does not use the words "owner or operator," the CAA has been interpreted to impose "strict liability upon owners and operators" of polluting facilities that violate the Act.  *See United States v. Dell'Aquilla*, 150 F.3d 329, 332 (3d Cir. 1998); *United States v. B&W Investment Properties*, 38 F.3d 362, 367 (7th Cir. 1994).

Oregon Steel . . . owns directly a 4.3% interest in CF&I." First Am. Compl. ¶ 13. The complaint goes on to allege that "Oregon Steel . . . , through its interest in and control over defendant, CF&I, owns and operates the [Pueblo] Mill." First Am. Compl. ¶ 16.

Defendants assert that the facts pled by USWA are insufficient to prove a claim of "ownership liability" or "operator liability," as defined by case law construing the CAA and related statutes. Defendants, however, outline what must be proven to ultimately succeed on the merits, and not what is required at the pleading stage. Indeed, courts have found that allegations similar to those in USWA's amended complaint were sufficient to allow claims against alleged owners and operators to proceed. *See, e.g.*, *CBS, Inc. v. Henkin*, 803 F. Supp. 1426, 1432 (N.D. Ind. 1992) (pleading alleging that defendants "were owner and operators" of hazardous waste site sufficient to state a claim under CERCLA); *Quadion Corp v. Mache*, 738 F. Supp. 270, 273-75 (N.D. Ill. 1990) ("federal pleading requirements [do not] compel the specification" of facts as to the basis for corporation liability). Moreover, most courts that have found the allegations in the pleading to be inadequate have authorized the plaintiff to replead those claims without prejudice. *See, e.g., Hokama v. E.F. Hutton & Co.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983); *United States v. A and C Investments, Inc.*, 513 F. Supp. 589, 591 (N.D. Ill. 1981).

-15-

The District Court therefore erred in dismissing the claims against Oregon Steel. Although USWA's pleading was general, it was sufficient to meet the minimal requirements of the Federal Rules. This pleading is fair notice to defendants that USWA expects, with the aid of discovery, to pinpoint the specific role that Oregon Steel plays vis-a-vis the Pueblo Mill. At a minimum, the District Court should have allowed USWA to replead its allegations with more specificity. We therefore reverse the District Court's dismissal of the claims against Oregon Steel.

## III.

For all the reasons stated above, the District Court's decision is reversed in all respects, and the case is remanded for proceedings consistent with this opinion.