■  In the Matter of JONATHAN KWITNY, Respondent, v ROBERT J. McGUIRE, as Commissioner of Police of the City of New York, et al., Appellants.—Judgment, Supreme Court, New York County, entered on January 14, 1980, affirmed, without costs and without disbursements, for the reasons stated by Wallach, J., at Special Term. Concur—Birns, Sandler and Sullivan, JJ.

Murphy, P. J., and Kupferman, J., dissent in a memorandum by Murphy, P. J., as follows: Special Term granted petitioner's application compelling the respondent police commissioner to permit him to inspect approved pistol license applications on file with the New York City Police Department (102 Misc 2d 124). For the following reasons, I believe that the application should have been denied. Subdivision 5 of section 400.00 of the Penal Law does state that an approved application for a pistol license shall be a "public record". Nonetheless, there is no automatic right of inspection simply because a particular document is a "public record". (49 NY Jur, Records and Recording Acts, §§ 19, 22; cf. *Matter of New York Post Corp. v Moses,* 10 NY2d 199, 203; cf. *Matter of Cavalier v McCue,* 58 AD2d 729.) Therefore, the classification of the approved license applications as "public records" does not answer the question of whether those applications should be made available for public inspection. The answer to this question will be found in the Freedom of Information Law (Public Officers Law, § 84 *et seq.).* The Freedom of Information Law must be liberally construed to allow maximum access to governmental records. Statutory exemptions are narrowly construed. *(Matter of Miracle Mile Assoc. v Yudelson,* 68 AD2d 176, 181, mot for lv to app den 48 NY2d 706.) Disclosure may be withheld only where the material requested falls squarely within the ambit of one of these statutory exemptions *(Matter of Fink v Lefkowitz,* 47 NY2d 567, 571). I would deny disclosure to the petitioner on the basis of the exemption set forth in section 87 (subd 2, par [f]) of the Public Officers Law. This section provides: "2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that * * * (f) if disclosed would endanger the life or safety of any person". When the subject applications

were filed and approved, the licensees expected that all matters would be kept confidential by the police department, as had historically been done. While the licensees' expectation of privacy is not the determinative factor on this appeal (Public Officers Law, § 87, subd 2, par [b]), it is a significant consideration that should not be overlooked. Presumably, all licensees provided sensitive information as to why they should receive a pistol permit. In most instances, the permits were issued to protect the licensee or his property. The respondent police commissioner has offered to turn over the approved applications with identifying data deleted. This approach would seem very reasonable since it would provide the petitioner with material for his study and it would simultaneously protect the identities of the licensees. The petitioner, however, seeks the names of the licensees so that he may write his article for the *Wall Street Journal* in even greater depth. Should all the approved applications be turned over to the petitioner, he may be able to write an article showing specific abuses in the issuance of pistol permits. It may be that certain licensees received favored treatment from or were not properly screened by the police department. Nonetheless, in opening the approved applications for public inspection, there is a serious risk that this information may be used for unlawful purposes. While many different situations could be explored, I point briefly to the problems faced by the jewelry community. In recent years, several jewel dealers have been murdered or have disappeared under suspicious circumstances. Unlimited access to the subject records could increase the chances that further harm will come to members of the jewelry community. A similar conclusion may be reached with regard to licensees in other fields of endeavor. While there are certain benefits to be derived from the disclosure of all approved applications, I am not prepared to say that those benefits clearly outweigh the concomitant dangers. At this point, I would prefer to remain upon the safe side by denying the application and by leaving it for the Legislature to make this very close policy decision. [102 Misc 2d 124.]