333 S.E.2d 799

**Ken HECHLER, as Secretary of State, State of West Virginia**

v.

**The Honorable Patrick CASEY, as Judge of the Circuit Court of Kanawha County, West Virginia, and Southeastern Security & Investigations, Inc.**

**No. 16700.**

Supreme Court of Appeals of West Virginia.

July 5, 1985.

Dissenting Opinion Aug. 8, 1985.

Charlie Brown, Atty. Gen., Gregory W. Bailey, Bethany R. Boyd, Asst. Attys. Gen., Charleston, for appellant.

R. Joseph Zak, Charleston, for appellee Southeastern Security.

McHUGH, Justice:

In this original proceeding the Secretary of State for the State of West Virginia [hereinafter "the Secretary"] seeks a writ

of prohibition[1] restraining the trial court from enforcing, in essence, two orders, the first enjoining the Secretary from disclosing to the public certain information about the employees of Southeastern Security & Investigations, Inc. [hereinafter "S.S. & I."] and the second enjoining the Secretary from conducting an administrative hearing to determine whether S.S. & I.'s private detective/investigator's license should be suspended or revoked. Before us is the petition, the response filed in accordance with the rule to show cause heretofore issued by us, all exhibits, including the transcripts of the evidentiary hearings before the trial court,[2] and the briefs and oral argument of counsel.

We believe that the trial court exceeded its jurisdiction in entering the injunctive orders in question and, consequently, we award the writ of prohibition, as moulded.

## I

S.S. & I., an Ohio corporation, in January, 1985, qualified to transact business in the State of West Virginia. Shortly thereafter, it began supplying security guards to Rawl Sales and Processing Company, a subsidiary of A.T. Massey Coal Company, at Rawl's processing plant at or near Lobata, Mingo County, West Virginia. For some months there had been a strike against Rawl by members of the United Mine Workers of America.

In March, 1985, the Secretary, pursuant to § 3.04 of his administrative regulations governing private detectives and investigators (including security guards),[3] requested in writing from S.S. & I. a list showing the names, birthdates, social security numbers, and current residence addresses of all employees of S.S. & I. stationed in the State of West Virginia. S.S. & I.'s attorney orally informed a deputy Secretary of State, in March, 1985, that S.S. & I. would furnish the requested information if the same would be kept confidential, so as not to further endanger the lives, health, or property of S.S. & I's security guards or their families. The deputy orally replied that, in his opinion, none of the statutory exemptions from the Freedom of Information Act (*W.Va.Code*, 29B–1–1 *et seq.*) were applicable.

By a written notice dated March 29, 1985, the Secretary scheduled an administrative hearing, pursuant to *W.Va.Code*, 30–18–5 [1959], to be held on April 23, 1985, to determine whether to suspend or revoke S.S. & I's private detective/investigator license. Evidence was to be received on two points: (1) S.S. & I.'s failure to supply the names, addresses, etc., of the security guards and (2) S.S. & I.'s employment of at

1. The Court notes that the preferable style to this proceeding in prohibition would have been to commence the same with "State of West Virginia ex rel...." *See State ex rel. Goodwin v. Cook*, 162 W.Va. 161, 166, 248 S.E.2d 602, 604–05 (1978) (a tribunal exceeding its jurisdiction acts in contempt of the sovereign, the people of the State).

2. There were two proceedings below, and the record before us contains the records, including orders and transcripts, from *both* proceedings. The first proceeding was for prohibitory and injunctive relief. It related to the Secretary's informal but unmistakable position that the list of S. S. & I's employees' names, addresses, etc., were, if furnished to the Secretary, available for public inspection upon request, under the Freedom of Information Act (*W.Va.Code*, 29B–1–1 *et seq.*). The second proceeding, a resumption of the first, was for injunctive relief. It related to the Secretary's scheduling of an administrative hearing on S.S. & I's alleged noncompliance with certain private detective/investigator laws, including the failure to supply the names and addresses of security guards. Thus, the two proceedings overlap and are inextricably interconnected on the question of disclosure of the names and addresses of the security guards. The trial court's order in the second, admittedly challenged proceeding, in enjoining the holding of the administrative hearing, necessarily presents on the record the question of disclosure to the public of the names and addresses of the security guards, inasmuch as the Secretary's position on the record on that point is adverse to S.S. & I's position on the record on the same. Moulding the writ under the circumstances of this case to provide guidance on the question of disclosure of the security guards' names and addresses to the public, and not merely to the Secretary, is appropriate due to the Secretary's existing ruling on the question and the desirability of judicial economy on an important public issue of first impression in this jurisdiction. *See Hinkle v. Black*, 173 W.Va. 133, 142, 262 S.E.2d 744, 748 n. 5 (1979).

3. These administrative regulations were made a part of the record before us.

least three convicted felons in violation of the statute on licensing of private detectives and investigators.

On April 3, 1985, S.S. & I. filed with the trial court a petition for prohibitory and injunctive relief. After issuing a rule to show cause and after conducting an evidentiary hearing, the trial court on April 22, 1985, entered an order, over the objection of the Secretary, compelling S.S. & I. to furnish to the Secretary the names, addresses, etc., of the security guards but, as a "protective provision," requiring the Secretary to maintain the confidentiality of such information by having those persons authorized to inspect the names, etc., as part of background investigations to execute a form "agreement" on the confidentiality of such information. In compliance with this order, S.S. & I. submitted the list of employees and their addresses, etc.

The three named employees of S.S. & I. who were suspected by the Secretary as being convicted felons had stated to the contrary in their employment applications. Each of the three had worked for S.S. & I. for less than thirty days, and each of them had been discharged prior to the scheduling of the administrative hearing.

Also on April 22, 1985, the trial court, upon examination of another petition for injunctive relief, granted a preliminary injunction preventing the Secretary from conducting the hearing scheduled for April 23, 1985, respecting the two matters covered in the notice of hearing, so as to permit the trial court the opportunity to determine those two issues after conducting a hearing on the permanency of the injunction. The Secretary thereafter moved to dissolve the preliminary injunction, but the trial court, on May 1, 1985, entered an order denying the motion to dissolve and setting May 20, 1985 as the date for the hearing on the permanency of the injunction.

## II

In applying for a writ of prohibition from this Court, in effect to dissolve the injunction against holding the administrative hearing on the two points covered by the notice of such hearing, the Secretary argues that the trial court in entering its injunctive orders exceeded its jurisdiction on the grounds that S.S. & I. failed to exhaust its administrative remedies, failed to prove irreparable harm, and failed to prove the inadequacy of available legal remedies. We agree with these contentions.

## III

*W.Va.Code,* 30–18–5 [1959] provides that the Secretary has the authority to promulgate and enforce such rules and regulations as he deems necessary for the administration and enforcement of the article on regulation of private detectives and investigators (*W.Va.Code,* 30–18–1 *et seq.*), including regulations on the issuance, suspension and revocation of licenses issued under such article. This section of the statute also provides for an administrative hearing prior to suspending or revoking a license. The action of the Secretary in suspending or revoking a license shall be subject to review by the Circuit Court of Kanawha County "or other court of competent jurisdiction."

Pursuant to this section of the statute, the Secretary promulgated, effective August 1, 1975, regulations pertaining to private detectives and investigators. *W.Va. Code,* 30–18–1 [1960] and § 2.03 of the regulations include and define watch, guard or patrol agencies or businesses as also subject to regulation. Included are guards furnished to protect persons or property.

Sections 3.03 and 3.04 of the regulations require, *inter alia,* that an applicant for a license furnish his, or, in the case of a corporate applicant, all of its employees', name(s) and residence(s), as well as the details of any criminal convictions. Similarly, *W.Va.Code,* 30–18–2(2) [1959] requires a corporate applicant to furnish, *inter alia,* for each officer, "[i]n addition to such further information as may be required by the secretary," information as to good character, competency and integrity, including whether any individual has ever been convicted of a felony, or other offense

set forth in *W.Va.Code*, 30–18–3 [1959].[4] (As noted, the regulations require the information for all employees, in addition to the officers, of a corporate applicant for a license. Section 10 of the regulations echoes this requirement for employees.)

Sections 4.01 and 4.02 of the regulations provide that the Secretary, with the assistance of the Department of Public Safety, shall conduct an initial investigation to determine the good character, competency and integrity of an applicant and if, in the Secretary's opinion it is warranted, he will conduct an investigation of an alleged violation by a licensee of the private detective/investigator licensing laws.

Section 9.01 of the regulations sets forth the grounds for the Secretary's suspension or revocation of a private detective/investigator license (after notice to a licensee and a hearing on the charges). Included in these grounds are: (a) making any false statement or giving any false information in connection with an application for a license or a renewal or reinstatement of a license; (b) violating any provision of the statute; (c) violating any of the Secretary's regulations; (d) an employee having been convicted of a felony or any crime involving moral turpitude or any other crime involving the illegal use, carrying or possession of a dangerous weapon.

Sections 9.02–9.04 govern the suspension/revocation hearing before the Secretary. The hearing is to be conducted in accordance with the State Administrative Procedure Act's provisions on contested cases, *W.Va.Code*, 29A–5–1 *et seq.*

■ Upon application of S.S. & I. the trial court has entered a preliminary injunction order preventing the Secretary from conducting such an administrative hearing on alleged noncompliance with the private detective/investigator laws. In so doing the trial court exceeded its legitimate powers by affording the extraordinary remedy of an injunction when the latter does not lie because there is an adequate remedy at law in the form of an administrative remedy provided by statute, specifically, the administrative hearing process, which has not been pursued, much less exhausted. Injunctive relief, like other equitable or extraordinary relief, is inappropriate when there is an adequate remedy at law. *See Pulliam v. Allen*, 466 U.S. 522, 536–537, 104 S.Ct. 1970, 1978, 80 L.Ed.2d 565, 576 (1984); *Allegheny Development Corp. v. Barati*, 166 W.Va. 218, 221, 273 S.E.2d 384, 386–87 (1980). One form of legal remedy which ordinarily is adequate is an administrative remedy provided by statute. " 'In general, where there is an administrative remedy provided by statute, it has been declared to be a plain, adequate and complete remedy, barring injunctive relief.' " *Gates v. Woods*, 169 F.2d 440, 442 (4th Cir.1948) (from S.D.W.Va.). Similarly, this Court held in syl. pt. 4, *Bank of Wheeling v. Morris Plan Bank & Trust Co.*, 155 W.Va. 245, 183 S.E.2d 692 (1971): "Proceedings in equity for injunctions cannot be maintained where there is an administrative remedy provided by statute which is adequate and will furnish proper remedy."

■ Our recent opinion in *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984), is controlling. In syl. pt. 1 thereto we held:

'The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.' Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association*, 143 W.Va. 674, 104 S.E.2d 320 (1958).

Citing syl. pt. 3, *State ex rel. Arnold v. Egnor*, 166 W.Va. 411, 275 S.E.2d 15 (1981); syl. pt. 3, *State ex rel. Gooden v. Bonar*, 155 W.Va. 202, 183 S.E.2d 697 (1971); syl. pt. 2, *Bank of Wheeling v.*

---

4. *W.Va.Code*, 30–18–3 [1959] prohibits the issuance of a license to any person who has been convicted in this State or elsewhere of a felony, or of any of the following misdemeanors or offenses: (a) illegally using, carrying or possessing a pistol or other dangerous weapon; (b) making or possessing burglar's instruments; (c) buying or receiving stolen property; (d) unlawful entry of a building; (e) aiding escape from prison; (f) unlawful possessing or distributing habit-forming narcotic drugs; or (g) any felony offense involving moral turpitude.

*Morris Plan Bank & Trust Co.,* 155 W.Va. 245, 183 S.E.2d 692 (1971); syl., *Capitol Business Equipment, Inc. v. Gates,* 155 W.Va. 260, 184 S.E.2d 125 (1971); and syl. pt. 2, *State ex rel. Burchett v. Taylor,* 150 W.Va. 702, 149 S.E.2d 234 (1966), this Court in *Cowie* recognized that the exhaustion of administrative remedies is a well-established general rule in this jurisdiction. *See generally* 4 K. Davis, *Administrative Law Treatise* §§ 26:1–26:15 (2d ed. 1983).

In *State ex rel. Arnold v. Egnor,* 166 W.Va. 411, 421, 275 S.E.2d 15, 22 (1981), we noted that "[t]here are exceptions to this general rule of exhaustion of administrative remedies such as lack of agency jurisdiction or the constitutionality of the underlying agency statute." Neither of these exceptions has been asserted at any time by S.S. & I.

This Court in *Cowie, supra,* emphasized that "[t]he existence of an administrative appeal is as important in determining the appropriateness of extraordinary remedies, such as prohibition [,] mandamus [and injunctive relief], as is the existence of an alternative avenue of judicial relief." 312 S.E.2d at 38. We referred, for example, to *McGrady v. Callaghan,* 161 W.Va. 180, 186–87, 244 S.E.2d 793, 796–97 (1978), in which this Court held that mandamus would not lie when there was a failure to pursue available and adequate administrative remedies (an administrative hearing as well as appeal to the courts). Similarly, "[t]he presence of a statutory review remedy will ordinarily render the injunctive interruption of the administrative process improper." *Anaconda Co. v. Ruckelshaus,* 482 F.2d 1301, 1304 (10th Cir.1973). The court therein concluded that extraordinary proceedings are usually inappropriate in the context of a generalized challenge to administrative proceedings "not ripe for review," such as when litigants attempt "to obtain threshold review by way of preliminary injunction, thereby avoiding the administrative hearing and the court review provided by statute...." *Id.* at 1305. If administrative proceedings are not allowed to take their course, the petitioner will usually be unable to show imminent irrepa-

rable injury, which is also generally fatal to injunctive relief. *Id.*

The following language from *Cowie, supra,* is particularly relevant:

Not only did the appellant in this case fail to exhaust his administrative remedies, he failed to even pursue them....

. . . .

The key issue in this case is the effect of the appellant's failure to pursue administrative remedies provided under the statutes involved....

. . . .

The appellant offers no explanation for his failure to pursue his administrative remedies. He does not contend that the appeal procedures ... were 'inadequate' in any way. [citation omitted] The appellant's attempt to substitute prohibition for [or here, to seek injunctive relief prior to] the exhaustion of administrative remedies available to him must be rejected[.]

173 W.Va. at 67–68, 312 S.E.2d at 38–39.

*Gates v. Woods,* 169 F.2d 440 (4th Cir. 1948) (from S.D.W.Va.), a leading case in this area, reaches the same conclusion for premature injunctive relief as *Cowie* did for substitutionary prohibition relief:

The rule is well settled that a person must first exhaust the prescribed administrative remedy before he can seek any relief in the courts....

. . . .

The plaintiffs have not even attempted to avail themselves of these administrative remedies.... [R]ather they rushed into the [s]tate [c]ourt and sought an injunction to checkmate the [administrative officials] from carrying out the duties imposed upon them by the Act. To sanction such procedure on their part would cut the heart out of administrative action and lead to chaos in the courts.

169 F.2d at 442–43.

█ In the case now before us the general rule requiring the exhaustion of administrative remedies is applicable. As in *Gates v. Woods, supra,* S.S. & I. in essence rushed into court for an injunction to prevent the Secretary from carrying out the

duties imposed upon him by *W. Va. Code,* 30–18–1 *et seq.,* specifically, investigating the hiring practices of S.S. & I. to determine whether, in light of its having previously hired three convicted felons, in violation of the statute and regulations, S.S. & I.'s private detective/investigator license should be suspended or revoked. In addition, the Secretary plans to investigate at the administrative hearing provided by *W. Va. Code,* 30–18–5 [1959] whether any other individuals with proscribed backgrounds have been employed by S.S. & I. Thus, it is clear that the matter is not now moot, as alleged by S.S. & I., merely because the three convicted felons have been discharged by S.S. & I. To the contrary, the matter is ripe for administrative development of the facts as envisioned by the legislature in enacting the regulatory scheme in question.

■ Having improperly enjoined the administrative hearing, the trial court exceeded its legitimate powers. "Our law is settled that a writ of prohibition will lie [as a matter of right] where the trial court does not have jurisdiction or, having jurisdiction, exceeds its legitimate powers." *State ex rel. Arnold v. Egnor,* 166 W.Va. 411, 422, 275 S.E.2d 15, 22 (1981), citing syl. pt. 3, *State ex rel. McCartney v. Nuzum,* 161 W.Va. 740, 248 S.E.2d 318 (1978), and syl. pt. 3, *State ex rel. Scott v. Taylor,* 152 W.Va. 151, 160 S.E.2d 146 (1968). *Accord,* syl. pt. 7, *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 313 S.E.2d 409 (1984): " ' "The writ of prohibition lies as a matter of right when the inferior court . . . exceeds its legitimate powers." ' " (citations omitted)

■ That the trial court has not ruled on the permanency of the injunction but has awarded only a preliminary injunction does not preclude this Court from granting the writ of prohibition at this time:

Prohibition is a preventive remedy. One seeking relief by prohibition in a proper case is not required, as a prerequisite to his right to resort to such remedy, to wait until the inferior court or tribunal has determined the question of its jurisdiction, or to wait until the inferi-

or court or tribunal has taken final action in the matter in which it is proceeding or about to proceed.

Syl. pt. 5, *State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 143 S.E.2d 535 (1965).

S.S. & I. and the Secretary should develop all relevant matters at the administrative hearing.

## IV

In its order entered on May 1, 1985, the trial court continued its preliminary injunction, thereby, *inter alia,* upholding the conditional refusal of S.S. & I. to furnish the names, addresses, etc., of its employees acting as security guards in this State. The condition upon which such refusal was made by S.S. & I. and approved by the trial court was that the Secretary maintain the confidentiality of the information. S.S. & I. contends that the information is exempt from the provisions of *W. Va. Code,* 29B–1–1 *et seq.,* this State's Freedom of Information Act [hereinafter "the State FOIA"]. S.S. & I. asserts that the information is exempt from disclosure to the public under *W. Va. Code,* 29B–1–4(2) [1977] or *W. Va. Code,* 29B–1–4(4) [1977], or both. We disagree.

■ The disclosure provisions of this State's Freedom of Information Act, *W. Va. Code,* 29B–1–1 *et seq.,* as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. *W. Va. Code,* 29B–1–1 [1977]. This section provides:

Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do

not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.[5]

This liberal construction of the State FOIA and the concomitant strict construction of the exemptions thereto are of fundamental importance in deciding any case involving construction of this statute.

*W.Va.Code,* 29B–1–4 [1977] provides in pertinent part:

> The following categories of information are specifically exempt from disclosure under the provisions of this article:
>
> . . . .
>
> (2) Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable

invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance: ...;

> . . . .
>
> (4) Records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement[.]

With respect to either of these two exemptions to the State FOIA, we write essentially on a "clean slate," for our research does not reveal any precedents of this Court on point.[6]

The corresponding exemptions provided by the Federal Freedom of Information Act [hereinafter, "the Federal FOIA"] are 5 U.S.C. §§ 552(b)(6)–(7) (1982) [hereinafter, "exemption 6" and "exemption 7" to the Federal FOIA].[7]

Virtually every other state also has so-called "open records" laws which are sim-

---

**5.** To the same effect as *W.Va.Code,* 29B–1–1 [1977] is this eloquent aphorism of James Madison in a letter to W.T. Barry, August 4, 1822, included in *The Complete Madison* 377 (Padover ed. 1953): "A Popular Government, without popular information, or the means of acquiring it is but a Prologue to a Farce or a tragedy; or perhaps both. Knowledge will forever govern ignorance; and the people who mean to be their own Governors, must arm themselves with the power which knowledge gives."

**6.** We note, however, the language in *Sattler v. Holliday,* 173 W.Va. 471, 318 S.E.2d 50 (1984). While this Court held in that case that the matter of disclosure of records alleged to be exempt as law enforcement records was not properly before us, we observed: "[A] good argument could be made that material should only be exempt if it protects an interest that weighs more greatly than the public's right to know.... We have been admonished to make decisions in favor of disclosure. W.Va.Code, 29B–1–1." 173 W.Va. at 473, 318 S.E.2d at 52.

**7.** Under these federal exemptions, matters are not available to the public which are:

> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
>
> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A)

interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel[.]

While the invasion of privacy exemption to the State FOIA closely tracks exemption 6 to the Federal FOIA, the law enforcement exemption to the State FOIA, as we noted in *Sattler v. Holliday,* 173 W.Va. 471, 473, 318 S.E.2d 50, 52 (1984), appears at first blush to be a somewhat broader exemption than exemption 7 to the Federal FOIA, amended in 1974 to limit exemption thereunder to six types of situations in which disclosure is likely to cause specified types of injury. We do not, however, believe that *W.Va. Code,* 29B–1–4(4) [1977] creates a blanket law enforcement exemption, as did the pre-1974 Federal FOIA, because our statute, unlike the pre-1974 Federal FOIA, does not exempt entire "files" labeled "law enforcement" and does not expressly limit disclosure to "authorized private parties," as did the pre-1974 Federal FOIA.

ilar to the Federal FOIA. *See generally* Braverman and Heppler, *A Practical Review of State Open Records Laws,* 49 Geo. Wash.L.Rev. 720 (1981).

We will discuss the invasion of privacy and law enforcement exemptions separately. These respective discussions are not intended to be exhaustive analyses anticipating all ramifications but are narrow in scope to articulate the rationale for our decision on nonapplicability of these exemptions in this case.

### A. INVASION OF PRIVACY

■ At the outset this Court holds that an agreement as to confidentiality between the public body and the supplier of the information may not override the Freedom of Information Act. *See Ackerly v. Ley,* 420 F.2d 1336, 1339–40 n. 3 (D.C.Cir. 1969). "[T]o allow the government to make documents exempt by the simple means of promising confidentiality would subvert FOIA's disclosure mandate." *Washington Post Co. v. United States Department of Health & Human Services,* 690 F.2d 252, 263 (D.C.Cir.1982). Accordingly, the form agreement on confidentiality prepared by counsel for S.S. & I. and incorporated by reference into the trial court's order requiring disclosure of the security guards' names, addresses, etc. to the Secretary is void to the extent it conflicts with the State FOIA.

■ The primary purpose of exemption 6 to the Federal FOIA "was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *United States Department of State v. Washington Post Co.,* 456 U.S. 595, 599, 102 S.Ct. 1957, 1960, 72 L.Ed.2d 358, 363 (1982) [hereinafter, *Washington Post* ]. The primary purpose of *W.Va.Code,* 29B–1–4(2) [1977] is the same. The threshold inquiry as to the type of information initially subject to this exemption turns not upon the label of the file containing the information nor upon the "intimate" or "highly personal" nature of the information. *See id.,* 456 U.S. at 600–02, 102 S.Ct. at 1960–61, 72 L.Ed.2d at 363–64. "Rather, '[t]he exemp-

tion [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.' [citation omitted]" *Id.,* 456 U.S. at 602, 102 S.Ct. at 1961, 72 L.Ed.2d at 364.

■ When disclosure of information which applies to a particular individual is sought from government records, the second and more critical prong of exemption 6 analysis comes into play, specifically, the balancing or weighing of the public's "right to know" against the individual's right to privacy.

> Judicial interpretation has uniformly reflected the view that no reason would exist for nondisclosure in the absence of a showing of a clearly unwarranted invasion of privacy, whether the documents are filed in 'personnel' or 'similar' files. . . . Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.' The device adopted to achieve that balance was the limited exemption, where privacy was threatened, for 'clearly unwarranted' invasions of personal privacy.

*Department of Air Force v. Rose,* 425 U.S. 352, 371–72, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11, 27 (1976) [hereinafter, *Rose* ]. Similarly, under *W.Va.Code,* 29B–1–4(2) [1977], a court must balance or weigh the individual's right of privacy against the public's right to know. Emphasizing the limited nature of the exemption, the Supreme Court of the United States stated: "Moreover, we repeat, Exemption 6 does not protect against disclosure every incidental invasion of privacy—only such disclosures as constitute 'clearly unwarranted' invasions of personal privacy." *Id.,* 425 U.S. at 382, 96 S.Ct. at 1608–09, 48 L.Ed.2d at 33.

In this regard the court expressed in *Washington Post, supra,* that the non-intimate or public nature of the information "may be a reason to conclude, under all the circumstances of a given case, that the release of such information would not constitute a 'clearly unwarranted invasion of

personal privacy,' ..." 456 U.S. at 602–03 n. 5, 102 S.Ct. at 1962 n. 5, 72 L.Ed.2d at 365 n. 5.

Furthermore, the court remarked in *Rose, supra,* that "[t]he legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities." 425 U.S. at 380 n. 19, 96 S.Ct. at 1608 n. 19, 48 L.Ed.2d at 32 n. 19.

The latter principle follows from the basic thrust of the Freedom of Information Act. As reviewed in *Rose, supra,* the following two salient points must be remembered in any FOIA case, regardless of which exemption is claimed to be applicable. First, the fullest responsible disclosure, not confidentiality, is the dominant objective of the Act. Second, the exclusive exemptions from disclosure must be narrowly construed. 425 U.S. at 360–62, 96 S.Ct. at 1599, 48 L.Ed.2d at 21–22.

With these fundamental purposes in mind, we now examine some precedents analyzing the invasion of privacy exemption in contexts similar to the facts in the case before us. For a collection of federal cases see annot., 16 A.L.R.Fed. 516 (1973). For a collection of state cases see annot., 26 A.L.R.4th 666 (1983).

In *Cunningham v. Federal Bureau of Investigation,* 540 F.Supp. 1 (N.D.Ohio 1981), an action was brought under the Federal FOIA to compel disclosure of information held by the F.B.I. "Many of the individuals about whom the plaintiff seeks information are police officers. The Court does not believe that any denial of information concerning police officers can be justified under either exemption [exemption 6 or exemption 7(C) authorizing withholding of law enforcement investigatory records when disclosure would constitute an unwarranted invasion of personal privacy]...." 540 F.Supp. at 2. The court held that there would not be an unwarranted invasion of the police officers' privacy because "[t]heir involvement in law enforcement activities is not a 'private fact'." *Id.* "Absent some showing that disclosure would endanger their safety and, thus that

Exemption 7(F) applies, defendants must produce these documents." *Id.*

*Cunningham* is persuasive in the instant case. If the disclosure of the identities of police officers does not reveal "private" facts, *a fortiori* the disclosure of the identities of security guards does not reveal "private" facts because the occupational activities of security guards involve less risk of physical harm. S.S. & I.'s claim that disclosure of their security guards' names and addresses to the public would endanger the lives, health or property of the guards or of their families is, on this record, speculative. The record indicates that there have been no acts of violence toward the guards even though their identity as guards is generally known and even though some of the guards have been temporarily residing at or near the job site where the labor dispute has been occurring.

Similarly, in *Ferguson v. Kelley,* 448 F.Supp. 919 (N.D.Ill.1977), the names of F.B.I. agents were not exempt from disclosure as an unwarranted invasion of their privacy. The agent's "involvement in investigative activities for the FBI is not a 'private fact.' While there may be instances when disclosure of an agent's identity would endanger his safety, exemption from disclosure under 552(b)(7) will be allowed only after a showing of that danger." 448 F.Supp. at 923.

To show that danger, law enforcement personnel may not merely assert that their occupational activities relate to possibly dangerous conduct. "The Court will not assume that the safety of law enforcement personnel who are involved in such investigations is endangered *per se.* Defendant must make a more compelling showing that disclosure would endanger the safety of law enforcement personnel." *Fiumara v. Higgins,* 572 F.Supp. 1093, 1107 (D.N.H.1983). Certainly, security guards, whose need for "protection" is less than that of law enforcement personnel, must make an even more compelling showing of danger.

Another reason that the names and addresses of the security guards are not exempt under the invasion of privacy exemp-

tion is that such information is not "personal"; rather, it is, practically speaking, "public" in nature, the release of which would not constitute an unreasonable invasion of "privacy." *See* n. 5, *Washington Post, supra.* "The Court may, in its balancing process, consider the extent to which the requested information is otherwise available. However, such availability 'strengthens the case for FOIA disclosure by suggesting that disclosure will not seriously invade personal privacy.' [citation omitted]" *National Association of Atomic Veterans, Inc. v. Director, Defense Nuclear Agency,* 583 F.Supp. 1483, 1487 (D.C.Cir.1984).

*Kotulski v. Mt. Hood Community College,* 62 Or.App. 452, 660 P.2d 1083 (Or.Ct. App.1983), addresses this very issue. Therein a faculty member sought the disclosure of the names and addresses of all part-time instructors at the college. The college offered the names but not the addresses on the ground that release of the latter would constitute information of a personal nature and would result in an unreasonable invasion of privacy under a state public records law exemption almost identical to *W.Va.Code,* 29B–1–4(2) [1977].

The court in *Kotulski* held the claimed exemption provision to be inapplicable. It defined "personal" information as that which would not normally be shared with strangers. The court then concluded that one's address does not fall within such definition, for addresses are commonly listed in telephone directories, printed on checks and provided to merchants, as well as appearing on drivers' licenses and other identification that is routinely shown to strangers. 660 P.2d at 1086.

This Court is of the opinion that the analysis in *Kotulski* is sound and supports disclosure of the names and addresses in this case. *W.Va.Code,* 29B–1–4(2) [1977] does not normally exempt from disclosure an individual's name and residential address because they are not "personal" or "private" facts but are public in nature in that they constitute information normally shared with strangers and are ascertainable by reference to many publicly obtain-

able books and records. Thus, disclosure of an individual's name and residential address would not result in an unreasonable invasion of privacy.

In *McNutt v. New Mexico State Tribune Co.,* 88 N.M. 162, 538 P.2d 804 (N.M.Ct. App.1975), *cert. denied,* 88 N.M. 318, 540 P.2d 248 (1975), a case not involving a freedom of information act but a tort action for invasion of privacy, policemen were denied recovery against a newspaper company which had, in retaliation for the officers' refusal to furnish information, published the officers' names and residential addresses in a story about the officers' gun battle with members of an organization called the Black Berets. Subsequent to publication, the plaintiffs received anonymous phone calls threatening violence. The court held that the publication was not an actionable invasion of privacy. In so holding the court concluded that the address of most persons appears in many public records, such as voting registration rolls, property assessment rolls, motor vehicle registration rolls, as well as in telephone directories. Thus, the court was of the opinion that an individual's home address is a public, not a private, fact, and the mere publication thereof does not constitute an invasion of privacy. 88 N.M. at 166, 538 P.2d at 808. *Accord, Strutner v. Dispatch Printing Co.,* 2 Ohio App.3d 377, 379, 442 N.E.2d 129, 133 (Ohio Ct.App.1982) (since addresses of individuals are easily ascertainable by reference to many publicly obtainable books and records, such as telephone directories and voting, tax, and motor vehicle records, mere publication of a person's address and name does not constitute tort of invasion of privacy). *See* annot., 84 A.L.R.3d 1159 (1978).

For another example of a case involving a state freedom of information act's invasion of privacy exemption, see *Kwitny v. McGuire,* 102 Misc.2d 124, 422 N.Y.S.2d 867 (Sup.Ct.1979), *aff'd,* 77 A.D.2d 839, 432 N.Y.S.2d 149 (App.Div.1980), *aff'd,* 53 N.Y.2d 968, 441 N.Y.S.2d 659, 424 N.E.2d 546 (1981) (pistol license applications containing names and addresses of applicants are not exempt from disclosure; danger to

applicants from criminals obtaining the information is speculative).

To summarize, in light of the liberal construction of the State FOIA disclosure provisions and the strict construction of the exemptions to such Act, the invasion of privacy exemption does not apply to a list of names and addresses of security guards furnished to the Secretary of State pursuant to his licensing and regulation of the guards' employer, since such information is not personal in nature but public facts, and since the risk of harm from disclosure is speculative.

### B. LAW ENFORCEMENT INVESTIGATORY RECORDS

S.S. & I. also contends that the list of names, addresses, etc., of the security guards is a record of a law enforcement agency, namely, the Secretary of State, and is to be kept confidential under the law enforcement exemption to the State FOIA.

■ The primary purpose of exemption 7 to the Federal FOIA for law enforcement investigatory records was "to prevent premature disclosure of investigatory materials which might be used in a law enforcement action." *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376, 383 (1982). The primary purpose of *W.Va.Code*, 29B–1–4(4) [1977] is the same.

The threshold inquiry under both the State FOIA and the Federal FOIA is whether the information claimed to be exempt from disclosure under the law enforcement exemption constitutes (1) "investigatory records" (2) "compiled for law enforcement purposes" (federal) or "records ... that deal with the detection and investigation of crime...." (state)[8]

■ The list of names, addresses, etc., of the security guards does not constitute "investigatory records" or "records

... that deal with the detection and investigation of crime" because it was not

compiled as part of an inquiry into specific suspected violations of the law. [citations omitted] Rather, [it is] more accurately described as [a] record[ ] generated pursuant to 'routine administration, surveillance or oversight....'

... The fact that information ... may form a *basis* for further investigation does not make that [information] an investigatory record created *pursuant to* an investigation. [emphasis in original]

... The information [in question] is ... gathered during the course of routine administration and does not become investigatory because it may alert the administrator to a possible violation of law.

*Goldschmidt v. United States Department of Agriculture*, 557 F.Supp. 274, 276 (D.D.C.1983). *Accord, Stern v. Federal Bureau of Investigation*, 737 F.2d 84, 89–90 (D.C.Cir.1984) (distinguishing between specifically focused "investigations" for "law enforcement" purposes and general "monitoring" by an agency). "Records ... that deal with the detection and investigation of crime," within the meaning of *W.Va.Code*, 29B–1–4(4) [1977], do not include information generated pursuant to routine administration or oversight, but is limited to information compiled as part of an inquiry into specific suspected violations of the law.

■ The list in question also does not constitute "internal records and notations ... which are maintained for internal use in matters relating to law enforcement[.]" *W.Va.Code*, 29B–1–4(4) [1977]. This part of this exemption to the State FOIA is similar to exemption 7(E) to the Federal FOIA involving confidential "investigative techniques and procedures." The language, "internal records and notations ... which are maintained for internal use in matters relating to law enforcement," within the meaning of *W.Va.Code*, 29B–1–4(4) [1977], refers to confidential investigative

---

**8.** On a related matter, we note that there has been no claim on the record that the list of names, addresses, etc., furnished to the Secretary by S.S. & I. does not constitute a "public record," as defined by *W.Va.Code*, 29B–1–2(4)

[1977] to include "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." This Court does not, therefore, decide whether such list is a "public record."

techniques and procedures. A mere listing of names, addresses, social security numbers, and the like, of the employees of a company subject to regulation by an agency clearly is not a confidential investigative technique or procedure.

> The theory underlying this exemption is that disclosure of such information could complicate the task of investigative agencies because potential violators of the law could familiarize themselves with the policies which govern law enforcement methods and frustrate investigations. [citation omitted] ... The exemption does not encompass, however, ordinary manuals or procedures unless they include confidential details of law enforcement programs. [citation omitted]

*Jaffe v. Central Intelligence Agency,* 573 F.Supp. 377, 387 (D.D.C.1983). *See generally* annot., 82 A.L.R.3d 19 (1978).

Having concluded that *W.Va.Code,* 29B–1–4(4) [1977] is not applicable to the facts of this case, even if it applies to civil enforcement proceedings of administrative agencies, we deem it unnecessary in this case to decide whether this exemption applies to records of "law-enforcement agencies" defined to mean only those agencies enforcing criminal laws. It is clear that exemption 7 to the Federal FOIA "includes the enforcement of both civil and criminal federal laws." *Stern v. Federal Bureau of Investigation,* 737 F.2d 84, 89 (D.C.Cir. 1984). It is not so clear whether *W.Va. Code,* 29B–1–4(4) [1977] includes regulatory agencies' proceedings only to invoke civil sanctions, such as suspension or revocation of a license issued by the agency, and not to enforce penal laws. The state

of Texas, for example, has an exemption worded identically to ours.[9] The legislative history of Texas' statute clearly limits the exemption to criminal law enforcement proceedings by any agency but some of the commentators have suggested a more expansive definition. *See* Comment, *The Texas Open Records Act: A Section-By-Section Analysis,* 14 Hous.L.Rev. 398, 413–14 & n. 131 (1977). Again, we leave to another day the question of the scope of the term "law-enforcement agencies" within the meaning of *W.Va.Code,* 29B–1–4(4) [1977].

To summarize, the law enforcement exemption does not apply to a list of names and addresses of security guards furnished to the Secretary of State pursuant to his licensing and regulation of the guards' employer, since such information was not part of an inquiry into specific suspected violations but was generated pursuant to routine administration of *W.Va.Code,* 30–18–1 *et seq.* and the regulations promulgated thereunder, and does not reveal confidential investigative techniques or procedures.

## V

In his memorandum of law filed with his petition to this Court, as well as in a subsequently submitted "motion" filed with us, the Secretary seeks recovery of attorney fees, including but not limited to the statutory attorney fee of thirty dollars ($30.00) provided by *W.Va.Code,* 59–2–14(b) [1960] to the party prevailing in this Court.

The Secretary cites as authority for such recovery *W.Va.Code,* 53–5–9 [1931] [10] and *W.Va.Code,* 59–2–18 [1931].[11] Included

---

**9.** *Tex.Rev.Civ.Stat.Ann.* art. 6252–17a, § 3(a)(8) (Vernon Supp.1985).

**10.** *W.Va.Code,* 53–5–9 [1931] provides, in pertinent part:

> An injunction ... shall not take effect until bond be given in such penalty as the court or judge awarding it may direct, with condition to pay ... such damages as shall be incurred or sustained by the person enjoined, in case the injunction be dissolved, ... or, if the injunction be not to proceedings on a judgment or decree, with such condition as such court or judge may prescribe.

In its injunctive order dated May 1, 1985, the trial court required S.S. & I. to post a bond in

the amount of $2,500.00 as security for "any lawful claims the [Secretary] may have in the event it is determined on appeal that the [injunctive order] of the [trial court] is modified or reversed."

**11.** *W.Va.Code,* 59–2–18 [1931] provides, in pertinent part: "In a case wherein there is judgment or decree on behalf of the State for costs, there shall be taxed in the costs ... the fees of attorneys and other officers for services, ..., as if such fees ... were payable out of the treasury...." S.S. & I. emphasizes the last clause as a limit on the State's recovery.

with his motion for attorney fees is an itemization of time and services expended in this matter by the Office of the Attorney General of this State representing the Secretary. The itemization is for a total of $8,112.50. It is based upon allegedly prevailing rates of $90.00 per hour and $70.00 per hour for partners and associates, respectively, in law firms in Kanawha County, West Virginia. The time billed is in quarter-hour increments.

S.S. & I. resists such motion. It asserts that no amount in excess of the $30 fee provided by *W.Va.Code,* 59–2–14(b) [1960] should be recoverable because affording the relief sought by the Secretary "would have a chilling effect upon any litigant's decision to pursue his legal remedies in the Courts of this state." S.S. & I. also challenges in several respects the manner of calculating the attorney fees. It points to purported "fee-stacking" (billing for more than one attorney's time during conferences between attorneys on the same case); to counsel's alleged drafting of proposed orders, when the Court apparently drafted its own order; to the alleged practice of the legal community to bill in one-tenth-hour increments; to the payment of attorney fees by the State under the Public Legal Services article at the rate of $25.00 per hour for in-court work and $20.00 per hour for out-of-court work.[12]

We hold that the Secretary is not entitled to recover reasonable attorney fees.

*W.Va.R.App.P.* 23(b) [13] expressly precludes an award of costs for the benefit of the State or an agency or officer thereof in a case before this Court. *W.Va.Code,* 59–2–14(b) [1960], providing for the inclusion in costs to the prevailing party in this Court of the statutory attorney fee of $30,

is, therefore, not applicable to the State as prevailing party in this Court.

With one exception discussed below, no party may recover attorney fees beyond the statutory amount as part of the "costs" of a proceeding. The Secretary's reliance on *W.Va.Code,* 53–5–9 [1931] is misplaced: "In the decree dissolving an injunction and dismissing the bill, attorney's fees (except the statutory fee) cannot be recovered as a part of the costs or as damages to the party prevailing. Reasonable attorneys' fees in such cases are recoverable in a suit on the injunction bond." Syl. pt. 2, *Humphrey Manufacturing Co. v. City of Elkins,* 93 W.Va. 16, 115 S.E. 846 (1923). This Court echoed the same holding in syl. pt. 1, *State ex rel. Shatzer v. Freeport Coal Co.,* 144 W.Va. 178, 107 S.E.2d 503 (1959): "Reasonable attorneys fees, incurred by the party enjoined in procuring the dissolution of an injunction which was wrongfully issued, are recoverable as an element of damages in an action upon an injunction bond."

We more recently discussed the allowance of reasonable attorney fees as part of the costs of extraordinary proceedings in the case of *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982), in which this Court awarded reasonable attorney fees in a mandamus proceeding against a public agency which, admittedly, failed willfully to obey a clear statute. In *Nelson* we recognized that "[a]s a general rule awards of costs and attorney fees are not recoverable in the absence of a provision for their allowance in a statute or court rule." 171 W.Va. at 450, 300 S.E.2d at 91. After noting that the mandamus statute authorizes a court to grant such a writ with or without "costs," [14] we mentioned the tradi-

---

12. *W.Va.Code,* 29–21–14(b)(1)–(2) [1981]. Itemization thereunder is to the nearest quarter-hour.

13. The language of *W.Va.R.App.P.* 23(b) reads as follows: "In cases involving the State of West Virginia or an agency or officer thereof, if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of subdivision (a); otherwise, costs shall not be awarded for or against the State."

14. *W.Va.Code,* 53–1–8 [1933], applicable to both mandamus and prohibition proceedings, authorizes an award of either of these types of writs with or without costs as the court or judge may determine. *W.Va.R.App.P.* 23(b), however, discussed in the text *supra,* precludes an award of costs to the State in this Court. This Court's procedural rule, to the extent it conflicts with the procedural statute, supersedes the statute. See *W.Va.R.App.P.* 1(a); *W.Va.Code,* 51–1–4 [1935]; *Perlick & Co. v. Lakeview Creditor's*

tional holding of this Court that reasonable attorney fees ordinarily are not recoverable as "costs." 171 W.Va. at 451, 300 S.E.2d at 91–92. We concluded, however, that an exception to the general rule was applicable, specifically, the allowance of reasonable attorney fees, without express statutory authorization, as part of the costs of the proceeding, when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. 471 W.Va. at 451, 300 S.E.2d at 92. It does not appear that this exception is applicable to the facts of this case.

In this case, though, we would not have to look to the "bad faith" exception in order to hold that reasonable attorney fees are recoverable by a prevailing *private* litigant. Under *W.Va.Code*, 53–5–9 [1931], they clearly would be recoverable by a private litigant.

 The question arises, though, whether, like a prevailing private litigant, the State or an agency or officer thereof may, under *W.Va.Code*, 53–5–9 [1931], recover reasonable attorney fees as damages incurred to have an injunction dissolved, when the State agency or officer was represented by the Office of the Attorney General of this State. We hold that the State may not so recover.

The compensation of an attorney general is to be determined in accordance with applicable constitutional and statutory provisions. 7A C.J.S. *Attorney General* § 6.a. (1980); 7 Am.Jur.2d *Attorney General* § 4 (1980). *W.Va. Const.* art. VII, § 19 provides, in pertinent part:

> The officers named in this article [the Attorney General is named in art. VII, § 1] shall receive for their services a salary to be established by law,[15] which

shall not be increased or diminished during their official terms, and they shall *not . . .* receive *to their own use any fees,* costs, perquisites of office or other compensation, and *all fees* that may hereafter be *payable by law, for any service performed by any officer* provided for in this article of the Constitution, *shall be paid in advance into the state treasury.* (emphasis added)

This section of the *Constitution* of this State was amended, effective November 4, 1902, to read as above. Prior to that date this section read, in pertinent part, as follows: "[T]he attorney general [shall receive] thirteen hundred dollars per annum; and no additional emolument or allowance, except as herein otherwise provided, shall be *paid or made out of the treasury of the State* to any of the foregoing executive officers on any account." (emphasis added) [16]

Thus, the *Constitution* of this State restricts the compensation of the Attorney General and of the other named executive department officers to a strict salary basis and bars the officers from supplementing or increasing their legislatively provided compensation by their receipt of fees or any other form of compensation. *See State ex rel. Barrett v. Boeckler Lumber Co.*, 302 Mo. 187, 204, 257 S.W. 453, 455 (1924).

 While prohibiting receipt of fees, etc., for the use of the executive officers, including the Attorney General, *W.Va. Const.* art. VII, § 19 expressly authorizes the receipt into the State treasury of all fees payable by law for any service performed by such officers. "[P]ayable by law" refers to statutory or constitutional authorization. *See Manchin v. Browning,* 170 W.Va. 779, 785, 296 S.E.2d 909, 915

*Trustee Committee,* 171 W.Va. 195, 202, 298 S.E.2d 228, 235 (1982).

**15.** The current annual salary of the Attorney General is $50,400. *W.Va.Code,* 6–7–2 [1984].

**16.** One obvious difference between the prior and the present versions of *W.Va. Const.* art. VII, § 19 is that the latter prohibits supplementation of the officers' salaries regardless of whether the source of the supplementation is

the State treasury. *Compare State ex rel. Barrett v. Boeckler Lumber Co.,* 302 Mo. 187, 206–07, 257 S.W. 453, 456 (1924) (prohibiting supplementation by receipt of fees from losing party; same constitutional language as in present *W.Va. Const.* art. VII, § 19), *with Thon v. Commonwealth,* 77 Va. 289 (1883) (statute restricting Attorney General's remuneration to salary without "further compensation" refers only to salaries payable out of State treasury and not to fees taxed in costs).

(1982); *W.Va.Code,* 2–2–10(t) [1973]. There is no statutory authorization for payment of the Attorney General's reasonable attorney fees [17] into the State treasury when the State agency or officer which he has represented has succeeded in having an injunction dissolved. *W.Va.Code,* 53–5–9 [1931] authorizes the person previously enjoined to recover *damages* in an action on the injunction bond. The State, however, has not been "damaged" by being enjoined. The salaries of the regular staff of the Attorney General would have been paid regardless of this litigation. That *W.Va. Const.* art. VII, § 19 does not expressly prohibit assistant attorneys general from supplementing their salaries from sources other than the State treasury [18] does not avoid the well established case law requirement (discussed above) that reasonable attorney fees are not recoverable unless *affirmatively* authorized by court rule or statute, and such is lacking here.

Finally, to allow the State to recover reasonable attorney fees would ordinarily have a "chilling effect" upon a person's constitutional rights to apply to government for redress of grievances [19] and to have the courts of this State open to him.[20]

In summary, the Secretary may not recover reasonable attorney fees incurred, either as "costs" or as "damages."

## VI

For the reasons set forth above, we grant the writ of prohibition as moulded.

Writ granted as moulded.

**BROTHERTON, Justice, dissenting:**

I concur with the majority's opinion except the part which upholds the May 21, 1985, action of the Court releasing the list of names and addresses of the security guards to the general public. I must dissent to that action, not that had the question been before the Court on proper motion that it might have been the proper action.

None of the parties before this Court requested the release of the names and addresses of the security guards to the general public. In fact, all parties agreed that the names should be kept sealed and even executed a consent order to that effect. No one filed a Freedom of Information Act request for this information.

Despite the fact that no one requested the names, this Court precipitously released the list of names on its own motion. A universal maxim of law in this country is that the judiciary acts only on cases and controversies. *See, e.g., Teller v. McCoy,* 162 W.Va. 367, 396–97, 253 S.E.2d 114, 131 (1978) (Neely, J. concurring in part and dissenting in part.); W.Va. Const. art. 8 § 3. A court should not fashion relief on its own motion on matters not before the court. I, therefore, must dissent to this action.

---

**17.** *W.Va.Code,* 5–3–5 [1931] provides for inclusion of the Attorney General's fee, that is, the nominal statutory attorney fee, in the costs of a proceeding in which he appeared for the State. *But see* n. 14, *supra.* We also note, for example, *W.Va.Code,* 46A–7–104(2) [1974], in which the Attorney General may, in certain circumstances, under his administration of the West Virginia Consumer Credit and Protection Act, require a person being investigated outside this State to pay the reasonable and necessary expenses of the Attorney General or his representative. This type of statute is not before us and we express no opinion on the validity thereof.

**18.** Under *W.Va.Code,* 5–3–3 [1961], assistant attorneys general may receive compensation from the State treasury for services performed for the State only "within the limits of the amounts appropriated by the legislature for personal services."

**19.** *W.Va. Const.* art. III, § 16. *See generally Webb v. Fury,* 167 W.Va. 434, 282 S.E.2d 28 (1981).

**20.** *W.Va. Const.* art. III, § 17. *See generally Nagy v. Oakley,* 172 W.Va. 569, 309 S.E.2d 68 (1983).