392 F.3d 532
 James F. WEILER, Sandra L. Weiler, Kimberely Dewey, Ann Martin, Charlene Poore, Kenneth Poore, Kenneth C. Poore, Jr., Clem Coryer, Mary Coryer, Marie E. Craven, Sheila House, Phillip Dority, Pamela Dority, Gregory A. Mills, Nancy Mills, Robert Woodard, Lisa Woodard, H.A. Patterson, Brian T. Patterson, Gary Mallette, and Ernestine M. Rieck, Plaintiffs-Appellants,
v.
CHATHAM FOREST PRODUCTS, INC., Defendant-Appellee.
 Docket No. 02-9500.
 United States Court of Appeals, Second Circuit.
 Argued September 26, 2003.
 Decided June 4, 2004.
 Amended December 8, 2004.
 
 Robert Ukeiley, Georgia Center for Law in the Public Interest, Atlanta, GA, for Appellants.
 Ruth E. Leistensnider, Albany, N.Y. (Nixon Peabody, Albany, NY, of counsel), for Appellee.
 Eliot Spitzer, Attorney General of the State of New York, Caitlin J. Halligan, Solicitor General, Denise A. Hartman, Assistant Solicitor General, Lisa M. Burianek, Assistant Attorney General, State of New York, Albany, NY, on the brief, for Amicus Curiae New York State Department of Environmental Conservation.
 Before: MESKILL, KATZMANN and RAGGI, Circuit Judges.
 MESKILL, Circuit Judge.[1]
 Appeal from the judgment of the United States District Court for the Northern District of New York, Scullin, J., dismissing the case for failure to state a cause of action under the Clean Air Act.
 Reversed and remanded.
 
 
 1
 This appeal requires us to consider whether section 304(a)(3) of the Clean Air Act, 42 U.S.C. § 7604(a)(3), allows a private litigant to sue in federal court to challenge the determination of the New York State Department of Environmental Conservation (N.Y.DEC) that the defendant may proceed with the construction of a factory without obtaining a particular permit.
 
 
 2
 Defendant-appellee Chatham Forest Products, Inc. (Chatham) proposes to build and operate an "oriented strand board manufacturing" factory in Lisbon, New York. The manufacture of strand board produces pollutants that may be emitted into the atmosphere. According to the plaintiffs-appellants, a group of citizens who live and work in the vicinity of Lisbon, Chatham did not obtain the permit required prior to construction of the proposed factory. Chatham concedes that it has not obtained the permit identified by the plaintiffs, a so-called "major source" permit. However, it maintains that the NYDEC, in issuing a different permit, conclusively determined that no major source permit is required, and that the plaintiffs may not sue in federal court to challenge the NYDEC's decision. The judge below held that federal judicial review is prohibited under the circumstances and dismissed the case for failure to state a cause of action. We reverse and remand.
 
 BACKGROUND
 
 3
 Because the facts of the case are somewhat technical in nature and intimately intertwined with the Clean Air Act's specific provisions, it is necessary to first lay out its basic frame work as it relates to this case.
 
 1. The Clean Air Act
 
 4
 The Clean Air Act, 42 U.S.C. §§ 7401-7671q (2000) (the Act), created a complex and comprehensive legislative scheme to protect and improve the nation's air quality. See Sierra Club v. Larson, 2 F.3d 462, 464 (1st Cir.1993).
 
 
 5
 Broadly speaking, Title I of the statute regulates stationary sources of pollution and Title II regulates mobile sources, most importantly motor vehicles. For specified pollutants, national air quality standards are promulgated by the EPA. 42 U.S.C. § 7409. Whether new construction of polluting facilities is permitted in an area, and what kind of controls are required, depends on whether the area is below or above the standard for each pollutant.
 
 
 6
 
 Id.
 
 
 
 7
 An entity proposing to construct a major emitting source of pollutants must obtain a permit prior to construction. See 42 U.S.C. §§ 7475(a), 7502(c)(5). Part C of subchapter I of the Act (Part C), 42 U.S.C. §§ 7470-7492, governs requirements in geographical areas where the standard has been attained; Part D of subchapter I of the Act (Part D), 42 U.S.C. § 7501-7515, applies to so-called nonattainment areas.
 
 
 8
 The Act defines a "major emitting facility" as "any stationary facility ... which directly emits, or has the potential to emit" the relevant quantity of pollutant as established by the Environmental Protection Agency (EPA). 42 U.S.C. § 7602(j) (emphasis added). In turn, the EPA defines "potential to emit" to mean:
 
 
 9
 [T]he maximum capacity of a stationary source to emit a pollutant under its physical and operational design. Any physical or operational limitation on the capacity of the source to emit a pollutant, including air pollution control equipment and restrictions on hours of operation or on amount of material combusted, stored, or processed, shall be treated as a part of its design only if the limitation or the effect it would have on emissions is federally enforceable.
 
 
 10
 40 C.F.R. § 52.24(f)(3) (2004) (emphasis added).
 
 
 11
 However, the District of Columbia Circuit held that this standard was unreasonable because it failed to include mechanisms that are practically effective, even if not "federally enforceable," in the determination of a facility's "potential to emit." See National Mining Ass'n v. EPA, 59 F.3d 1351, 1363-65 (D.C.Cir.1995) (finding a parallel definition of "potential to emit" unreasonable). In response, the EPA issued an "interim policy," explaining that "the term `federally enforceable' should now be read to mean `federally enforceable or legally and practicably enforceable by a state or local air pollution control agency.'" EPA Interim Policy on Federal Enforceability of Limitations on Potential to Emit, at 3-4 (Jan. 22, 1996), available at http://www.epa.gov/ttn/oarpg/t5/memoranda/pte122.pdf (last visited Jan. 12, 2004).
 
 
 12
 In short, then, a proposed facility that is physically capable of emitting major levels of the relevant pollutants is to be considered a major emitting facility under the Act unless there are legally and practicably enforceable mechanisms in place to make certain that the emissions remain below the relevant levels.
 
 2. State Implementation
 
 13
 The Act "places the primary responsibility for enforcement on state and local governments." N.Y. Pub. Interest Research Group v. Whitman, 321 F.3d 316, 320 (2d Cir.2003). In keeping with this principle, the EPA does not itself issue major source construction permits required by Part D of the Act. Rather, each state is directed to adopt and submit to the EPA for approval a state implementation plan (SIP) to implement and promote the policies and goals of the Act. The SIP must designate a state agency or its delegates to review applications for major source construction permits under Part D and to monitor compliance with the permit once a facility has begun operation. See 42 U.S.C. §§ 7410(a), 7471, 7502(b) & (c), 7503.
 
 
 14
 Under the New York SIP permit scheme, which has been approved by the EPA, see N.Y. Pub. Interest Research Group, 321 F.3d at 319, a factory that has the capacity to emit major levels of particular pollutants may avoid the stringent permit requirements of Part C and Part D and proceed as a "minor emitting facility" if it agrees to "cap" its pollution output. If it does so, it may receive a "synthetic minor" source permit. See N.Y. Comp.Codes R. & Regs. tit. 6, §§ 201-7.1 — 201-7.2. The NYDEC administers New York's SIP.
 
 
 15
 3. The Facts of the Case and the Question Presented
 
 
 16
 In this case, the Chatham factory was approved by the NYDEC under the synthetic minor source permit scheme because the NYDEC concluded that the mechanisms in place to limit the pollution output would be effective and enforceable. The plaintiffs allege that the factory must be considered a major emitting facility under the Act because the mechanisms put in place to limit pollution are neither practically effective nor enforceable. For instance, plaintiffs argue that the pollution output monitoring scheme does not adequately account for pollutants emitted during startup and shutdown of factory operations. They allege further that upstate New York is a nonattainment area for several of the pollutants that will be emitted by the factory. As a consequence, they maintain that Chatham must comply with the demanding permit requirements of Part D of the Act, and that a synthetic minor source permit is not sufficient.
 
 
 17
 They sued under section 304(a)(3) of the Act, which states:
 
 
 18
 [A]ny person may commence a civil action on his own behalf — ... (3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter ... or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.
 
 
 19
 42 U.S.C. § 7604(a)(3).
 
 
 20
 The judge below held that this section does not allow a private litigant to sue in federal court to challenge the NYDEC's determination that no major source permit is necessary.
 
 DISCUSSION
 
 21
 Our review of the district court's holding that plaintiffs have failed to state a cause of action is de novo. Phillip v. University of Rochester, 316 F.3d 291, 293 (2d Cir.2003).
 
 
 22
 We begin our analysis, of course, with the text of the statutory provision in question, namely, section 304(a)(3)'s citizen suit provision. As stated previously, it provides that any person may sue a "person who proposes to construct... any ... major emitting facility without a permit required under part C ... or part D." 42 U.S.C. § 7604(a)(3). The plaintiffs have alleged that the proposed factory will be a major emitting facility within the meaning of the Act and that Chatham has not obtained the permits required by Part D for major emitting facilities. These factual allegations, if proven, appear to be sufficient under the language of the provision to allow the plaintiffs to succeed in their effort to halt the construction of the factory. At this stage of the litigation, the district court was required to accept these allegations as true. Chambers v. Time Warner, 282 F.3d 147, 152 (2d Cir.2002). It is therefore difficult to see in what respect the plaintiffs have failed to state a cause of action.
 
 
 23
 Chatham's contention appears to be that the structure of the Act bars citizen suits brought under section 304(a)(3) in federal court that would undermine the NYDEC's determination that the proposed factory will not be a "major" source of pollution as defined by the Act.
 
 
 24
 Before discussing the specific issues raised by this argument, we note as a guiding principle that citizen suits play an important role in the Act's enforcement scheme. Wilder v. Thomas, 854 F.2d 605, 613 (2d Cir.1988). The citizen suit provisions were designed not only to "motivate government agencies" to take action themselves, id. (internal quotation marks omitted), but also to make citizens partners in the enforcement of the Act's provisions. See Friends of the Earth v. Consol. Rail Corp., 768 F.2d 57, 63 (2d Cir.1985). Citizens serve "as a supplemental and effective assurance that the Act [is] implemented and enforced." Friends of the Earth v. Carey, 535 F.2d 165, 172 (2d Cir.1976) (internal quotations omitted).
 
 
 25
 We also note that "Congress has frequently demonstrated its ability to explicitly provide that ... an administrative proceeding or court action will preclude citizen suits." Consol. Rail Corp., 768 F.2d at 63 (citing statutes in which Congress has specifically precluded citizen suits where administrative or judicial proceedings have taken place). That Congress did not do so in this case strongly suggests that it had no such intent. See id. Therefore, in the absence of any express statutory language or other strong indication of congressional intent, we doubt that Congress intended to preclude citizen suits brought pursuant to section 304(a)(3) of the Act.
 
 
 26
 Chatham does not point to any express statutory language or other strong indicators evincing congressional intent to foreclose suits brought by citizens in this context. Instead, it argues that (1) Congress has provided other avenues of enforcement under the Act, thus rendering section 304(a)(3) suits unnecessary, (2) Congress intended to give states a major role in implementing the Act, and permitting judicial oversight of state permit decisions would undermine that role, and (3) the EPA's approval of New York's SIP insulates Chatham from a claim that the enforcement mechanisms imposed by the NYDEC pursuant to the SIP are insufficient.
 
 
 27
 With respect to Chatham's first argument, we agree that other mechanisms of enforcement exist to challenge the NYDEC's determination. Third parties who would be affected by the opening of a new facility may challenge the NYDEC's permit decision by way of an Article 78 administrative proceeding in New York Supreme Court. N.Y. C.P.L.R. § 7801, et seq. Additionally, if the EPA disagrees with the state's assessment of a facility's potential to emit, it may take action on its own, including filing a civil action to mandate compliance with the major source requirements.[2] See 42 U.S.C. § 7413(a)(5), (b); cf. United Steelworkers of Am. v. Oregon Steel Mills, 322 F.3d 1222, 1224 (10th Cir.2003) (noting the EPA's disagreement with the state regulator's determination that a source was not subject to major source restrictions). Affected third parties also may sue a state entity under the Act's citizen suit provisions to require the entity to comply with the terms of its SIP, see 42 U.S.C. § 7604(a)(1), so it is at least arguable that the NYDEC would be susceptible to suit for failing to follow SIP-mandated procedures for reviewing permit applications.[3] Furthermore, the same provision might permit citizens to bring suit against private entities that operate factories that have violated the Act's standards.
 
 
 28
 However, we fail to understand how the very existence of alternative enforcement mechanisms evinces congressional intent to prohibit use of section 304(a)(3) citizen suits in this context. The alternative mechanisms identified by the defendant are not adequate substitutes for section 304(a)(3) suits. For instance, although New York has opted to provide for review of the NYDEC's decisions in state court, Congress did not require it to do so; there is also no guarantee that the full range of remedies and awards that are available in a citizen suit, see 42 U.S.C. § 7604(d), will be available in a suit brought in state court. It is therefore difficult to understand how New York's decisions regarding whether to provide state judicial review, and which remedies to make available, have any relevance to a determination of Congress' intent in enacting section 304(a)(3) of the Clean Air Act.[4]
 
 
 29
 Likewise, section 304(a)(1), although it may be available to plaintiffs, does not provide the same relief sought in this action in at least two respects. First, plaintiffs bringing suits under section 304(a)(1) must give sixty days notice to the EPA, the state, and the private defendant prior to filing suit. 42 U.S.C. § 7604(b)(1). By contrast, plaintiffs proceeding under section 304(a)(3) are excused from this requirement. Oregon Steel Mills, 322 F.3d at 1227. More significantly, a section 304(a)(1) suit can only be brought against a private defendant after a facility has been built and begun operation.[5] By contrast, section 304(a)(3) provides relief before construction has begun.[6] Given that Congress evidently saw a value to creating a pre-construction right to sue, we cannot agree that a potential post-construction right to sue is an adequate substitute.
 
 
 30
 Finally, while the EPA may take action in federal court against the facility if it determines that the facility has violated the Act, viewing such an enforcement mechanism as a substitute for a citizen's suit would undermine the very purpose of the citizen's right to sue. Simply put, we cannot say that the existence of potentially overlapping enforcement mechanisms demonstrates Congress' intention to preclude a citizen suit in this particular case.
 
 
 31
 We are also unpersuaded by the defendant's second, complementary argument. Based on Congress' intention that states play a significant role in the implementation of the Act, as evidenced by the reliance on SIP schemes, the defendant concludes that Congress must have intended to foreclose citizen suits brought under section 304(a)(3) that would challenge the determinations of state agencies.
 
 
 32
 This argument proves too much. This argument, if accepted, would preclude a section 304(a)(1) challenge against the NYDEC as well, because a suit against the NYDEC would equally undermine New York's enforcement scheme;[7] yet even the defendant admits that a section 304(a)(1) claim against the NYDEC is theoretically available to the plaintiffs. Further, we do not understand how judicial oversight would undermine the exercise by the state agency of its nondiscretionary duty to implement the Act. The question in this case is whether Chatham sought, and the NYDEC granted, the correct permit. If they did, then the NYDEC properly exercised its authority and Chatham is free to construct the facility; if there was error, then Chatham may not yet proceed.[8] Congress has required both state agencies and private entities to meet the demands of the Act. The plaintiffs allege that both the agency and the private entity have not met their responsibilities; we do not see why the private entity should be immune from this suit.
 
 
 33
 Chatham appears to offer a final argument to support its contention that it is not subject to a section 304(a)(3) suit under these circumstances. According to Chatham, once the EPA approves an SIP, a private entity operating pursuant to a permit issued by a state agency is insulated from a suit brought by a private citizen. The argument appears to be that the EPA's decision that an SIP comports with the requirements of the Act cannot be attacked in a suit such as this one.
 
 
 34
 As with the defendant's other arguments, this claim fails to sway us. At best, it suggests a policy rationale that Congress should preclude citizen suits in this context. It offers no indication, however, that Congress actually chose to do so.
 
 
 35
 In sum, Chatham's structural arguments cannot overcome the plain language of the Act. If Congress intended to foreclose citizen suits in this context, it could have said so.
 
 
 36
 The plain text of the statute, together with an understanding of the central role played by citizen suit provisions in enforcing the Act and the EPA's own interpretation, lead us to conclude that the district court erred when it determined that federal courts may not entertain suits brought against private entities under section 304(a)(3) to challenge a state agency's determination that no major source permit is necessary.
 
 CONCLUSION
 
 37
 For the reasons we have stated, we conclude that a state determination that a prospective source of air pollution is not a major emitting facility does not prevent a private plaintiff from bringing a suit seeking to enjoin the construction of the facility pursuant to section 304(a)(3) of the Act, 42 U.S.C. § 7604(a)(3). Accordingly, the judgment below is vacated and this matter is remanded for further proceedings consistent with this opinion.[9]
 
 
 38
 The NYDEC shall receive a copy of this order.
 
 
 
 Notes:
 
 
 [1]
 Judge Katzmann provided substantial assistance in the preparation of this opinion
 
 
 [2]
 Citizens have also tried to appeal to the EPA a state's decision to grant a construction permit to a major sourceSee In re Alcoa-Warrick Power Plant, 2003 WL 1383468 (2003) (citing 42 U.S.C. § 7475 and 40 C.F.R. §§ 52.21, 124.19). However, the EPA has determined that it does not have jurisdiction to consider an appeal of a state decision that a major source permit is unnecessary. Id. (citing In re DPL Energy Montpelier Elec. Generating Station, 9 E.A.D. 695 (EAB 2001); In re Carlton, Inc. North Shore Power Plant, 9 E.A.D. 690 (EAB 2001)). Thus, this process does not serve as an alternative enforcement mechanism in this case.
 
 
 [3]
 Section 304(a)(1) provides for citizen suits
 against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a state with respect to such a standard or limitation.
 42 U.S.C. § 7604(a)(1).
 
 
 [4]
 Indeed, there is no evidence that the EPA, much less Congress, had any indication that New York chose to provide state judicial review over the NYDEC's permitting decisions
 
 
 [5]
 Section 304(a)(1) permits suits against entities "who [are] alleged to have violated ... or to be in violation of" an SIP. 42 U.S.C. § 7604(a)(1). This would not permit suits against a private defendant prior to construction of a facility
 
 
 [6]
 Section 304(a)(3) expressly permits suits against "any person whoproposes to construct" a facility. 42 U.S.C. § 7604(a)(3) (emphasis added).
 
 
 [7]
 Indeed, one could argue that a suit against the state agency itself undermines the state's enforcement scheme to a far greater extent than a suit against a private entity
 
 
 [8]
 We note that we have ruled in the section 304(a)(1) context that plaintiffs must exhaust administrative and state judicial remedies before proceeding in federal courtAction for Rational Transit v. West Side Highway Project, 699 F.2d 614, 616-17 (2d Cir.1983) (per curiam). A similar requirement may apply in the section 304(a)(3) context. But because the exhaustion issue is not before us, we do not here rule whether plaintiffs are required to exhaust their permit challenge in the state courts.
 
 
 [9]
 Because the judge below dismissed for failure to state a cause of action, he did not consider the alternative grounds suggested by the defendant for dismissing the case. On remand, the judge may address those issues. In addition, the EPA and the NYDEC may participate in the proceedings on remand as appropriate